## STATE *vs.* ARTHUR McGAHEY.

Opinion filed July 7th, 1893.

### Redirect Examination of Defendant.

It is proper upon the redirect examination of a witness in a criminal case to permit him to state facts and circumstances that tend to correct or repel any wrong impressions or inferences that arise from the matters drawn out on cross-examination, and this rule is not changed because such facts and circumstances may be of such a character as to prejudice the defendant in the minds of the jury.

### Harmless Error—Not Ground for Reversal.

An error of the court in ruling upon the admission of evidence that conclusively appears to have been innoxious, and could have worked no prejudice to the party objecting, is no ground for reversal.

### Striking Out Testimony—Caution to Jury.

Where, in answer to proper questions, a witness volunteers incompetent and irresponsive matter in his answers, and which matter has but an indirect bearing upon the issue upon trial, and is promptly stricken out by the court, in the presence and hearing of·the jury, on motion of opposing counsel, such action amounts to a withdrawal of such matter from the jury, and no duty rests upon the court, in the absence of any request thereunto, to further caution the jury, either at that time or in the general charge, to disregard such matter.

### Prosecution Need Not Call all Eye Witnesses.

No duty rests upon the prosecution in a criminal case to produce and swear as witnesses for the state all the eyewitnesses to the transaction, where the testimony of the witnesses called, or some of them, is direct and positive, and apparently covers the entire transaction.

### Remarks of Counsel for State—Caution by Court.

The control of the remarks of counsel for the state during a criminal trial is a matter largely in the discretion of the trial court; and where the objectionable remarks are of a general character, and such as would not be likely, under the attending circumstances, to prejudice the cause of the accused in the minds of honest men of fair intelligence, the failure of the court to strike out such remarks, or caution the jury against them, is not such an abuse of discretion as will constitute error.

### Cross-examination—Collateral Matters.

While a party to an action cannot object to questions asked a witness upon cross-examination, tending to elicit proof that the witness had been guilty of practices that would affect his credit before the jury, yet, where such matters are purely collateral to the issue, the answer of the witness is final, and it is not proper to introduce contradicting evidence.

**Cross-examination—Witness—Criminal Relations with Defendant.**

> The state has the right, on cross-examination, to show the nature of the relations existing between the witness and the accused, so far as their relations are such as would create a bias on the part of the witness that might reasonably be supposed to affect his testimony, and this rule cannot be changed by the fact that these relations may be such as to prejudice the accused in the minds of the jury.

**Request Refused When Covered by General Charge.**

> It is not error to refuse an instruction requested that correctly states the law, and is applicable to the case, when the court, in its general charge, has fully and specifically covered the same points.

Error to District Court, Grand Forks County; *Templeton*, J.

Arthur McGahey was convicted of shooting at another with intent to kill, and brings error.

Affirmed.

*John M. Cochrane*, for plaintiff in error.

Failure of the court to rule on objections of defendant, when the objections were properly made—was error. Elliott. Ap. Pro. § 727; *Conning* v. *Woodin*, 8 N. W. Rep. 572. The re-examination of complaining witness as to cause of animosity between himself and defendant, was prejudicial error. 1 Thomp. on Trials, § 484; *Schaser* v. *State*, 36 Wis. 432, 11 Alb. Law Jr. 224. Questions assuming facts not in evidence were improperly allowed. *Cornwell* v. *Cogwin*, 17 N. Y. Sup. 299; *Peo.* v. *Cahoon*, 50 N. W. Rep. 384; *State* v. *Smith*, 49 Conn. 376; *People* v. *Mather*, 21 Am. Dec. 122. The conversations between complainant and his wife in the absence of defendant were improperly admitted. *Barbee* v. *State*, 4 S. W. Rep. 584; *Taylor* v. *State*, 11 S. W. Rep. 462; *Maines* v. *State*, 5 S. W. Rep. 123; *Tyler* v. *State*, 11 Tex. App. 388; *Washington* v. *State*, 17 Tex. App. 197; *Favors* v. *State*, 20 Tex. App. 155. The court having admitted irrelevant testimony over objection of counsel—should upon striking the same out thereafter have instructed the jury to disregard such testimony even without being specially requested so to do. 2 Thomp. on Trials § 2339; *Yeo.* v. *Peo.* 49 Ill. 412; *Peo.* v. *Wheeler*, 60 Cal. 589. The swearing of William Brittan for the state—his name not

appearing upon the information—was error. *Peo.* v. *Hall*, 12 N, W. Rep 665; *Peo.* v. *Moran*, 4 Am. Crim. Rep. 470. . Defendant's request should have been granted to have Mrs. Hill an eye witness of the shooting, sworn as a witness for the state. *Thompson* v. *State*, 17 S. W. Rep. 448; *Territory* v. *Hanna*, 5 Pac. Rep. 252; *Weller* v. *Peo.*, 1 Am. Crim. Rep. 283; *Maher* v. *Peo.*, 10 Mich. 212; *Hurd* v. *Peo.*, 25 Mich. 405; *Peo.* v. *Gordon*, 40 Mich. 716; *State* v. *Magoon*, 50 Vt. 338; *Thomas* v. *Peo.* 39 Mich. 309; *State* v. *Middleham*, 17 N. W. Rep. 446; Whart. Cl. Ev. § 448; Chapmans Case, 8 C. & P. 558; Orchards Case, 8 C. & P. 559; *Peo.* v. *Dietz*, 49 S. W. Rep. 296; *Peo.* v. *Eller*, 45 N. W. Rep. 1109. And the objection that the witness is not favorable to the prosecution is no excuse for not calling her. *Weller* v. *Peo.*, 1 Am. Crim. Rep. 283; *Hurd* v. *Peo.*, 25 Mich. 415; *Territory* v. *Hanna*, 5 Pac. Rep. 252. The statement of the prosecuting attorney in answer to defendant's request that Mrs. Hill be called for the state should have been stricken out. *Hardtke* v. *State*, 30 N. W. Rep. 726; *Hall* v. *Wolf*, 16 N. W. Rep. 711; *Peo.* v. *Dane*, 26 N. W. Rep. 781, Cross-examination of Mrs. Hill a witness for defendant as to acts of adultery with defendant on the pretense of impeaching her testimony, but in fact proving another crime against the defendant· was highly prejudicial and improper. *Hoberg* v. *State*, 3 Minn. 181; *State* v. *McGee*, 46 N. W. Rep. 764; *State* v. *Starrett*, 32 N. W. Rep. 387; *Peo.* v. *Thurston*, 2 Parker Crim. Rep. 130; *State* v. *Gordon*, 3 Ia. 415; *State* v. *Hoyt*, 13 Minn. 125. The rule permitting cross-examination of a witness upon irrelevant matters affecting character as going to the creditability of the witness has never been extended to permit the repeated asking of questions upon the same line, all of which questions impute crime. *Peo.* v. *Cahoon*, 50 N. W. Rep. 384; *Sullivan* v. *Dieter*, 49 N. W. Rep. 263. When evidence tends to prove two things, one of which it may properly be admitted to prove but not the other, it should go to the jury, with an explanation from the court of its legitimate bearing. *Webster* v. *Enfield*, 10 Ill. 298; 2 Thomp. on Trials § 2416; *Kelley* v. *State*, 18 Tex. App. 262; *Holmes* v. *State*, 20 Tex. App.

509; *Alexander* v. *State*, 21 Tex. App. 410; Whart. Cr. Ev. § 46.

*Bangs & Fisk*, (*W. H. Standish, Atty. Gen'l* of Counsel) for the defendant in error.

Upon re-examination of a witness it is proper to ask him questions for the purpose of drawing forth an explanation of a sense and meaning of expressions used by him on cross-examination. 1 Thompson on Trials, § 486; *Schaser* v. *State*, 36 Wis. 432; *Goodman* v. *Kennedy*, 10 Neb. 270; *State* v. *Hopkins*, 50 Vt. 316; *People* v. *Smallman*, 55 Cal. 188. A witness may be permitted to to state in his own language what may be necessary by way of introduction to make his narrative intelligable and thus may state what others told him. *Shultz* v. *State*, 1 Crim. Law Mag. 140. The extent to which a re-direct examination will be allowed to proceed rests in the discretion of the trial court. *Slinkler* v. *State*, 9 Neb. 241; *Towers* v. *Leach*, 26 Vt. 270. Where improper testimony has crept in but is promptly ordered stricken out by the court, the defendant cannot predicate error on account of the neglect of the court to specifically charge the jury to disregard such testimony in the absence of a request so to do. *Arthur* v. *Griswold*, 55 N. Y. 408; *Hopt* v. *Utah*, 120 U. S. 430; *Zell* v. *Comm.* 2 Crim. Law Mag. 22, 25. No duty rests upon the state to produce and swear all eye-witnesses to the transaction where the testimony of the witnesses called, is direct and positive and apparently covers the entire transaction. *Comm.* v. *Haskell*, 140 Mass. 128; *State* v. *Middleham*, 62 Ia. 150, S. C. 14 N. W. Rep. 446. Where objectionable remarks of counsel are of a general character and not likely to prejudice the case of the accused in the minds of honest men of fair intelligence the failure of the court to strike out such remarks or caution the jury to disregard them is not an abuse of discretion. See note to 26 N. W. Rep. 782; *Epps* v. *State*, (Ind.) 1 N. E. Rep. 492; *State* v. *McCool*, 9 Pac. Rep. 618; *Schuler* v. *State*, (Ind.) 2 West. 801. The evidence of uncommunicated threats which were offered to be proven by the defendant was inadmissible as the threats were not made by Hill against the

defendant but were made by defendant himself against the witness Hill. *State* v. *Cross*, (Ia.) 26 N. W. Rep. 64. Witnesses cannot be contradicted upon *collateral* matters brought out on cross-examination for the purpose of impeachment. Wharton's Cr. Ev. § 484; *Stokes* v. *Peo.* 53 N. Y. 175; *Kent* v. *State*, (Ohio) 6 Cr. Law Mag. 520 and note. It is well settled that witnesses who are not parties may, for the purpose of impeachment and within the sound discretion of the trial court, be required to testify as to collateral facts which may tend to degrade them. *Terr.* v. *O'Harre*, 1 N. D. 30, S. C. 44 N. W. Rep. 1007. And this may be done although the facts thus brought out may also reflect upon the character of the defendant and thereby prejudice the accused in the minds of the jury. *State* v. *Bacon*, 13 Ore. 143, S. C. 8 Cr. Law Mag. 82. Error cannot be predicated upon the admission of evidence under a general objection, a specific ground of objection be stated. *Burke* v. *Koch*, 75 Cal. 356, S. C. 17 Pac. Rep. 228; *Chicago E. I. R.* v. *People*, 120 Ill. 667. The refusal of the court to instruct the witness Mrs. Hill as to her privilege cannot be taken advantage of by defendant for the reason that the witness did not claim her privilege, and defendant's counsel could not do so for her. *People* v. *Brown*, 72 N. Y. 573. A general objection to evidence is sufficient only where the evidence is inadmissable in its nature. That a question is "irrelevant" and "inadmissable" will not raise the question of its incompetency where it is relevant to a certain point in issue. *Fozer* v. *N. Y. Cent. & H. R. R. Co.* 105 N. Y. 659; *Burke* v. *Koch*, 75 Cal. 106; 1 Rice on Ev. 920, 921. Where the law of the case is fully stated to the jury by the court error cannot be predicted on the refusal of the court to give a specific instruction. *Biefield* v. *State*, 19 N. W. Rep. 607.

BARTHOLOMEW, C. J. Arthur McGahey, the plaintiff in error, was convicted in the District Court for the County of Grand Forks of the crime of shooting at one Thomas Hill with intent to kill. It is not possible to read the record in this case without becoming strongly impressed with the belief that McGahey had also been guilty of adulterous intercourse with Hill's wife. It is

safe to say that all the evidence tending to establish or indicate such adultery was objected to by the able attorney for the plaintiff in error, and the rulings of the court upon these objections are here for review. The elementary principle which would ordinarily render such evidence inadmissable is too familiar to need mention, and the state, admitting the principle, contends that there has been no violation of it in this case. The shooting affray occurred upon one of the thoroughfares of the City of Grand Forks, in daylight. Hill, with his wife, was in a building used as a skating rink, and of which he was the proprietor. McGahey was on the sidewalk, on the opposite side of the street. It is undisputed that McGahey fired three shots from a revolver at or in the direction of Hill, and that Hill fired one shot from a rifle at MaGahey. Each party claimed that the other shot first, and on that point the case turned. The shooting occurred about 8 o'clock in the evening on May 24th, 1892. Hill as the principal witness for the state, testified that he was sitting upon a pile of lumber in the rink, talking with his wife; that the door was open, and McGahey came down the other side of the street, and, seeing witness through the door, drew his revolver, and commenced firing; that he (Hill) ran over to an open window, and returned the fire. On cross-examination it developed that, a few hours before, Hill had gone into a store, and procured a repeating rifle, and caused it to be loaded, and taking it with him, went down into the woods by the brewery, where he had been told he would find his wife and McGahey. He was asked, "How did you come to feel the necessity of having a gun just at this time?" He answered, "I knew if I ran against this man at the place I was going to look for him I might have trouble." From this language, under the circumstances, a strong inference might be drawn that Hill was the aggressor. On redirect examination the question was put, "Why did you think you needed this [the rifle] to protect yourself?" This was objected to as not proper redirect examination. The plain purpose of the question was to enable the witness, by giving antecedent facts and circumstances, to

remove the inference left by the cross-examination. This is one of the most important purposes for which a redirect examination is allowed. *Schaser* v. *State*, 36 Wis. 429; *State* v. *Hopkins*, 50 Vt. 316; *People* v. *Smallman*, 55 Cal. 185. The fact that the answer to the question called out a narrative of certain matters touching former conduct of plaintiff in error and his relations with Mrs. Hill, that might prejudice him in the eyes of the jury, cannot change the rule of law. Plaintiff in error moved to strike out a certain portion of the answer to the foregoing question as not responsive, and the court made no ruling. This is assigned as error. This failure of the court to make a ruling was probably equivalent to a denial of the request, but there was no prejudicial error. True, the language was not strictly responsive, but it had no element of prejudice in it. The witness stated that plaintiff in error was at one time in the habit of going to his room late at night, changing his clothes, and going out again. This act is entirely consistent with innocence and good character. We would not depart, particularly in a criminal case, from the rule which requires reversal in every case where evidence is improperly admitted, unless it conclusively appears that such error was innoxious,—that it not only might not, but could not, be prejudicial to the party against whom it was offered; but we feel bound to say in this case that such harmless language could not prejudice the minds of jurymen of average intelligence.

The 4th, 5th, 6th, 7th, and 8th assignments of error present in different forms the same question discussed under the 1st, and require no separate discussion. The 9th and 10th assignments are identical in principle. Certain questions were asked the witness Hill on his redirect examination, and objections thereto overruled. After the witness had answered, motions were made to strike out the answers, or parts thereof, as not responsive, and as immaterial. These motions were sustained, but the court, neither at the time nor in the general charge, cautioned the jury to disregard such testimony. The questions were proper, but a willing witness dragged in incompetent and irresponsive matter

in his answer, and, although promptly stricken out on motion, it is urged that this was not sufficient to remove the poison that it had instilled in the minds of the jurors; that it was a case where it became the duty of the court, without any special request thereto, to caution the jury to disregard it. It has been held that where counsel, in argument to the jury, stated evidentiary matters of which there was no proof, it was the duty of the court, without request, to instruct the jury to disregard such statement. *Yoe* v. *People*, 49 Ill. 412. It has also been held that, where incompetent evidence has been admitted upon the statement of counsel that he would subsequently, by other evidence, so connect the incompetent testimony with the case as to remove the objection, and such subsequent testimony was not produced, it became the duty of the court to expressly withdraw such incompetent testimony from the jury. *Dillin* v. *People*, 8 Mich. 357. And it has even been held, under such circumstances, that the subsequent withdrawal of such testimony did not cure the error. *Marshall* v. *State*, 5 Tex. App. 273. And see *Arthur* v. *Griswold*, 55 N. Y. 400. A full discussion of the subject may be found in Thomp. Trials, § § 715, 723. While there is lack of uniformity in the decisions, no case is cited which fairly supports the contention of plaintiff in error in this case. The divergence of authority arises from the inherent difficulty in announcing any rule of universal application. When important testimony, bearing directly upon the issue, is introduced at one stage of the trial, and permitted to remain before the jury, while other testimony is given, forming an integral part of the facts, that find a lodgment in the minds of the jurors, and on which they reach their conclusions, and it subsequently appears that such former testimony was, for any cause, clearly improper, it is no doubt the duty of the court in explicit language to direct the jury to disregard such testimony. And the mind can readily suggest cases in which, by reason of the *equipoise* of the other evidence in the case, and the magnitude of the issues at stake, no words of the judge could certainly be relied upon to enable the jurors to entirely emancipate themselves

from the effects of the vicious testimony. "It had poisoned their minds, and its effects could not be erased from their memories." But to hold that where an over-willing witness, in answer to a proper question, volunteered immaterial and irresponsive matter in his answer, such error could not be cured by immediately withdrawing such improper matter from the jury, would open the door for a reversal of a large percentage of criminal cases, and for no material reason, and for no error of the prosecution or the court. But it is claimed this matter was not taken from the jury. We think it was in effect. As soon as the improper testimony left the mouth of the witness, counsel moved that it be striken out, and the court, in the presence and hearing of the jury, so orderd. No intelligent juror misconceived the situation. In a case of this kind, (and we need go no further,) where, at most, the evidence had but an indirect and inferential bearing upon the case, the court had no further duty pertaining to the matter. It was but an incident, and by no means an important incident, in the trial. Before the general charge was reached, it had naturally passed from the mind of the court. If counsel desired a specific instruction on the point, he should have requested it. Doubtless, in the abundance of protection that courts properly throw around persons accused of crime, such a request would have been given. We do not say that a refusal to give it would have been error, but we do say that no error can be predicated upon the failure of the court to give such specific instruction without request.

The testimony of the state developed the fact that Mrs. Hill was present at the rink when the shooting occurred, and might have been an eyewitness of the affray, or at least a portion of it. When the state rested, the plaintiff in error requested the prosecuting attorney to produce Mrs. Hill and have her sworn as a witness for the state. This the prosecutor declined to do, whereupon counsel for plaintiff in error moved the court to order that Mrs. Hill be so produced and sworn. The motion was denied, and this ruling is assigned for error. It is proper to state

that besides the witness Hill not less than six other persons had been sworn for the prosecution, all of whom based their testimony upon the sense of sight or hearing, or both, and the testimony thus produced covered all parts of the transaction. Under this assignment of error it is urged that it was the duty of the prosecutor to produce and swear all persons who were shown by the evidence to have been present at the time of the affray, and whose testimony could throw any light upon the subject that would in any degree aid the jury in ascertaining the facts. The rule thus invoked was carly established in England. In *Reg.* v. *Holden*, 8 Car. & P. 606, *Patteson*, J., said: "Every witness who was present at a transaction of this sort ought to be called; and, even if they gave different accounts, it is fit that the jury should hear their evidence, so as to draw their own conclusions as to the truth of the matter." This was a homicide case. And see *Reg.* v. *Chapman*, Id. 559; *Reg.* v. *Bull*, 9 Car. & P. 22; Rosc. Crim. Ev. 128. While this rule was established in that country at a time when the right of persons accused of crime to be represented by counsel was denied, or greatly abridged, and hence the rule found greater support in justice and necessity than at present, yet we are not aware that it has ever been abrogated. The state of Michigan seems to have adopted this rule in its entirety. It is true that the cases in that state which first discussed the question (*Maher* v. *People*, 10 Mich. 212; *Hurd* v. *People*, 25 Mich. 405; *Wellar* v. *People*, 30 Mich. 16; and *Thomas* v. *People*, 39 Mich. 309) announced the modified rule hereinafter stated, but the latest and strongest utterance of that very able court on the subject is found in *People* v. *Dietz*, 86 Mich. 419, 49 N. W. Rep. 296. This was a case of assault with intent to do great bodily harm. There were four persons engaged in the affray,—two on each side. The prosecutor called the two on one side, and the testimony covered the entire transaction. The court refused to require the prosecution to swear the other party to the affray, not on trial, and who was present in court, and also refused to require the prosecution to produce and swear three ladies who witnessed the difficulty

from the porch of a house 35 rods distant, and who were sworn on the preliminary examination. The case was reversed, and the court said: "We think the better rule is that it is incumbent upon the prosecutor not only to have the witnesses present in court, but to have them sworn in behalf of the people, and he may then examine them much or little, as he chooses. It affords the defense an opportunity to cross-examine without prejudicing their case by the bias of the witness, if he should have any." And see *People* v. *Gordon*, 40 Mich. 716; *People* v. *Etter*, 81 Mich. 570, 45 N. W. Rep. 1109. But see, also, comments of Cooley C. J., in *Bonker* v. *People*, 37 Mich. 4. We do not think *State* v. *Magoon*, 50 Vt. 338, cited by counsel, sustains his position; and *Donaldson* v. *Com*. 95 Pa. St. 21, also cited, is not an authority. The case was rape, and was reversed upon another ground, but the court said: "We cannot forbear, however, remarking that, in our opinion, the physician who, the day after the occurrence, examined the person of the girl upon whom the offense was alleged to have been committed, should have been called as a witness, and required to testify by the district attorney. Whether his evidence tended to acquit or convict, it was demanded equally by the cause of humanity on the one side and of justice on the other. We say this more especially because there was no direct evidence of the *factum* of the crime, and no proof of actual penetration, the prosecutrix having testified that she was insensible, and had no knowledge of what took place. We do not reverse for this reason, and do not sustain the fifth assignment of error, which raises the question, but merely express our opinion as to what should have been done in the peculiar circumstances of this case." In the case in 10 Mich., Judge Christiancy said: "Whenever it appears evident to the court that but part of the facts, or a single fact, has been designedly selected by the prosecution from the series constituting the *res gestæ*, or entire transaction, and that the evidence of the others is within the power of the prosecutor, it would, I think, be the duty of the court to require the prosecutor to show the transaction as a whole." And in *Hurd* v. *People*,

*supra*, the same learned judge, again speaking for the court, said: "But the prosecution can never in a criminal case properly claim a conviction upon evidence which expressly or by implication shows but part of the *res gestæ* or whole transaction, if it appear that evidence of the rest of the transaction is obtainable. This would be to deprive the defendant of the benefit of the presumption of innocence, and throw upon him the burden of proving his innocence." In *Territory* v. *Hanna*, 5 Mont. 248, 5 Pac. Rep. 252, it is said: "The authotities are clear and conclusive upon the proposition that the prosecution cannot select out part of a transaction, and ask a conviction thereon, when testimony showing the whole thereof is within its reach." *Thompson* v. *State*, 30 Tex. App. 325, 17 S. W. Rep. 448, was a homicide case, where the shooting was admitted, and self defense relied upon, by defendant. It was admitted that there were four eye witnesses to the shooting, all of whom had been subpœnæd by the state, and were present in the court room. The state introduced only circumstantial evidence and the testimony of experts, and the court refused to require the prosecutor to introduce any of the eyewitnesses. This was held error, on the broad ground that the evidence introduced was not the best evidence of which the case was susceptible, and revealed the existence of more original sources of information as stated in 1 Greenl. Ev. § 82. The modified rule applied in these cases commends itself so instantaneously to the judicial mind that it would probably be accepted by any court in the land. But the facts and circumstances of this case leave it clearly outside the influence of this rule. Here not less than seven witnesses had testified directly to facts as they saw them and heard them. There had been no particular facts selected out by design or otherwise. The entire transaction had been sifted in all its details. There is not even a suggestion of concealment in the evidence. Nor is it suggested that Mrs. Hill was in better condition to know the facts that any one of several witnesses whom the state called. The most that can be claimed is that Mrs. Hill, testifying upon the same matters, and with the same means of

knowledge, might have contradicted the testimony of the other witnesses. Under such circumstances, no duty rested upon the state to call her. The law is ever more zealous to protect innocence than to punish crime. Persons accused of crime have the full and free use of the process of the court to compel the attendance of witnesses. They are always represented by counsel, chosen either by themselves or by the court. They can be convicted only upon evidence that the jury regards as practically conclusive, and so juries are always instructed. We regard it as clearly unsafe to go further, and require the prosecution, after it has fairly and in good faith given the entire *res gestæ* to the jury, to call every witness to the transaction, howsoever bitterly hostile such witness may be to the prosecution, or howsoever powerful his motives may be to screen the defendant. To place such a witness in the hands of astute counsel for cross-examination would be to confound justice, and establish a rule that innocence never requires for its protection. This assignment of error cannot be sustained on this ground. *State* v. *Middleham*, 62 Iowa, 150, 17 N. W. Rep. 446; *State* v. *Eaton*, 75 Mo. 586; *State* v. *Johnson*, 76 Mo. 121; *State* v. *Martin*, 2 Ired. 101; *State* v. *Smallwood*, 75 N. C. 106; *State* v. *Cain*, 20 W. Va. 679; *Com.* v. *Haskell*, 140 Mass. 128, 2 N. E. Rep. 773.

When counsel for the plaintiff in error asked the court to compel the prosecution to produce and swear Mrs. Hill, the prosecuting attorney, in opposing such request, and in the presence and hearing of the jury, used the following language: "Information comes to me that the witness whose presence is requested as a witness for the state has been known to be conniving and going with the defendant in endeavoring to secure testimony in any way that it can be secured as against the state, in favor of the defense, and for that reason the state declines to produce her or to swear her here as a witness for the state." Counsel for plaintiff in error immediately moved to strike out this statement as an improper statement to be made before the jury. There was no ruling on the

point, and this absence of action by the court is assigned as
error.    Regarding the failure to rule as equivalent to denying the
motion, it follows that, if the statement was improper, the point
made must be sustained. The diligence of learned counsel has been
awarded with the citation of numerous cases upon this question.
The citations are all of comparative recent date, as the question
is one of the refinements of the law that has but recently
developed into its present proportions. That the rules announced
in these cases are in the interests of fairness and justice, and that
they should be implicitly enforced in all proper instances, cannot
for a moment be doubted; but they should not be indiscrimin-
ately extended.    Counsel must have some latitude and some dis-
cretion.    In the heat of *nisi prius* trials, where questions are raised
that must be instantly met, counsel cannot be expected to weigh
with nicety and precision the effect of their words.    This matter
must, of necessity, rest largely in the discretion of the court, and
abuse of that discretion is not to be rashly presumed.    We are in
full accord with the language of the learned Supreme Court of the
State of Indiana, that "when the statement is a general one, and
of a character not likely to prejudice the cause of the accused in
the minds of honest men of fair intelligence, the failure of the
court to check counsel should not be deemed such an abuse of
discretion as to require a reversal." *Combs* v. *State*, 75 Ind. 215.
And more emphatically would this be true where, as in this case,
the remarks were addressed to the court, and were entirely perti-
nent and proper for the court to hear; and, while in the presence
of the jury, yet in no sense directed to them, or intended to influ-
ence them.    No case cited by counsel would warrant us in sus-
taining his point.    The cases will be found to fall almost without
exception into one of three classes.  By far the largest class are cases
where counsel have violated some express statutory provision,
such as referring in argument to the jury to the fact that a defen-
dant in a criminal case failed to be sworn as a witness, or by
referring on a second trial to the fact of a former conviction.    In
these cases a reversal is, of course, imperative.    In other cases

counsel have stated to the jury, as facts in counsel's own knowledge, matters prejudicial to the defendant, but immaterial to the issue on trial, and which could not be properly given in evidence; or have sought to augment the force of the evidence by their own positive but unsworn assertion of a pertinent and material matter. Another class of cases comprise the instances where counsel, in argument, have assumed certain facts to be proven, of which there was no evidence whatever. In all the cases it will be found that the objectionable language was gratuitous. In this instance, under the condition of the authorities heretofore cited, the prosecuting attorney was entirely warranted in believing that, when opposing counsel demanded that he produce and swear as a witness for the state a party who was present at the transaction, it was imperatively necessary for him to render to the court a good and sufficient reason for not so doing. This he did in a manner by no means extravagant, and what he said could only indirectly affect the accused by impairing the credit of a witness whom he subsequently called. But we do not think its effect even went to that extent. The prosecutor was careful to state nothing as a fact. He did not give to the statement the weight of his own assertion of its truthfulness. He simply said that information had come to him of a certain character. This information was such that it would be dangerous for him to call the party, unless he new the information to be false. We do not think the language used, in the manner, under the circumstances, and for the purpose stated, was at all "likely to prejudice the cause of the accused in the minds of honest men of fair intelligence," and hence there was no abuse of judicial discretion in refusing to strike it out, or caution the jury against it.

The defendant below called one Susie Thompson as a witness, and, after showing her age to be 16, sought to prove by her that she had been seduced by the complaining witness Hill, and that he was the father of her bastard child. After a number of questions in this line had been ruled out on objection by the state, counsel for plaintiff in error made a formal offer to prove that

said Hill had seduced this witness, and was the father of her child, and that he had seduced another young girl, and had an abortion produced upon her; that he had admitted these facts to various parties, and, among others, to McGahey; and that McGahey told Hill "that if he didn't desist from such practices he would make a complaint to the officers, and procure his arrest." The offer was rejected by the court. Counsel then insisted, and now insists in this court, that such evidence was proper for the purpose of impeaching Hill, and also for the purpose of showing threats by McGahey against Hill, and thus, as bearing upon the question as to who was the aggressor, furnish a motive on the part of Hill for putting McGahey out of the way. These positions are entirely untenable, and need but brief mention. Hill has been asked on cross-examination as to all of these alleged criminal practices, and had denied them. It was proper to ask him these questions on cross-examination, as affecting his credibility; but his answers were final. The court could not go into an investigation of the truth of these purely collateral matters, and thus virtually place Hill upon trial, instead of McGahey. This is elementary. 1 Greenl. Ev. § 449, and cases cited.

Nor need we enter into a discussion of the law as to threats, communicated or uncommunicated. The question does not properly arise. McGahey did not threaten Hill with prosecution for anything that he had done. The threat was that, "if he did not desist from such practices, he [McGahey] would make complaint," etc. But there was no intimation in the offer of proof that Hill had been guilty of any such practices since McGahey's warning. There was no claim that the condition, upon which alone the threat was based, existed. The offer showed nothing that could raise in Hills' mind the least apprehension of danger from McGahey.

Mrs. Hill was sworn as a witness for plaintiff in error. On cross-examination the state's attorney, over the objection of the opposing counsel, was permitted to interrogate her at length as to her relations to and criminal intercourse with McGahey. This

is urged as error. The able counsel does not contend that it was improper to ask the witness on cross-examination as to her criminal relations with men generally as affecting her· credit, but urges that such object could be equally well attained without specifically naming McGahey, and that the necessary effect of so naming him must have been to prejudice the jury against him. Admitting counsel's conclusion, we are still of opinion that the line of cross-examination was proper. The state has the right to show the relations existing between the witness and the party at whose instance, and presumably in whose interest, she was testifying. It had the right to expose to the jury every motive and desire of the witness that might naturally and reasonably be supposed to produce that bias that would effect the character of her testimony. 1 Greenl. Ev. 450, note; *Cameron* v. *Montgomery,* 13 Serg. & R. 128; *Batdorff* v. *Bank,* 61 Pa. St. 179; *State* v. *Bacon,* 13 Or. 143, 9 Pac. Rep. 393.

Some errors pertaining to the charge of the court are argued in the brief of the counsel for plaintiff in error, but an examination of the abstract, amended as stipulated at the oral argument, shows that no exceptions to the action of the court in this matter were saved except in one instance, and that pertains to the refusal of the court to give an instruction requested relative to the law of self-defense. We see no objection to the instruction asked, and it was applicable to the case, but its refusal was not error. It is true that a general charge will not always cure the error in rejecting a specific instruction. Elliott, App. Proc. § 706, and cases cited in note. But in this case the charge of the court covered every point in the instruction refused as specifically and as favorably to plaintiff in error as did the rejected instruction; hence its rejection was not error. Thomp. Trials, § 2352, and cases cited in note. We have noticed all the points argued, and, finding no error in the record, the judgment of the trial court must be affirmed. All concur.