STATE of North Dakota, Plaintiff and Respondent,

v.

Lucas BERGER, Defendant and Appellant.

Cr. No. 341.

Supreme Court of North Dakota.

Dec. 27, 1966.

Rehearing Denied Feb. 14, 1967.

Helgi Johanneson, Atty. Gen., Bismarck, and William C. Kelsch, State's Atty., Mandan, for plaintiff and respondent.

Sperry & Schnell, Bismarck, for defendant and appellant.

MURRAY, Judge.

This is a criminal case. The defendant was charged with the crime of uttering a forged instrument. The information reads in part as follows:

"Lucas Berger did with intent to defraud, utter and publish as true, a forged instrument, which instrument the said Lucas Berger knew was forged, to-wit: did utter and publish as true a check written on the Hartford Insurance Group in the sum of $66.50 and payable to one Lynn Stark, Judgson [sic], North Dakota, and on which check the signature of said Lynn Stark was forged. This contrary to Section 12–39–23 of the NDCC."

Defendant later moved for a new trial upon the grounds that the verdict was clearly against the evidence and upon newly discovered evidence. Said motion for new trial has been previously dismissed. All that is before us now is the appeal from the judgment of conviction.

In order to fully understand this action, we hereby quote verbatim the entire text of Section 12–39–23, N.D.C.C.:

"Every person who, with intent to defraud, utters or publishes as true, any forged, altered, or counterfeited instrument, or any counterfeit gold or silver coin, the forging, altering, or counterfeiting of which is declared to be forgery, knowing such instrument or coin to be forged, altered, or counterfeited, is guilty of forgery *as if he had forged, altered, or counterfeited the instrument or coin so uttered.*" (Emphasis ours.)

To summarize the facts, they are approximately as follows:

Defendant is involved, with other members of his family, in the business of trucking cattle. In connection with this cattle-hauling business, certain cattle were hauled for one Starck. On one trip, a calf died. An insurance check was written November 10, 1965, from the Hartford Insurance Group, in the amount of $66.50, which was received by the defendant in the mail one or two days after that date. On November 13, 1965, the defendant, in the company of another man, came into the Mirror Bar in Mandan, North Dakota. At that time defendant cashed this check, which then bore the name of "Lynn Stark" [the forger did not spell the name correctly; it is "Starck"] on the back thereof as an endorsement. It is undisputed that this endorsement was a forgery, because, not only does the transcript reflect this, but appellant so calls it in his statement of facts in his brief.

The defendant acknowledges that he received the check payable to Lynn Starck and also containing the defendant's name thereon, as trucker. Defendant claims that he gave the check to a person called "Gary Mason", who was at the time a former employee of the Berger Brothers Trucking Company, along with $66.50 in cash, to take out to Lynn Starck to have Lynn Starck endorse the check. Defendant claims that Mason returned the check to him with Starck's name thereon and told the defendant that he had given the money to Starck. The defendant signed his name beneath the name of Stark [sic], and cashed the check as aforesaid.

Responding to his inquiry, Starck received a letter from the insurance company asking if he had received payment, and he wrote back that he had not. The company then sent him State's Exhibit No. 4, a letter and photostatic copy of the check, whereupon Starck signed a complaint on January 26, 1966, against Lucas Berger.

On the trial, one Mary T. Barnes, who apparently also uses the name Mary Berger, testified. In the record she identified herself as defendant's bookkeeper and babysitter. She said that Mason came to the Berger residence where she was and asked her to sign Starck's name and she did so, thinking that it was an insurance claim.

Mason never appeared as a witness for either side, and defense testimony reflects the fact that he is allegedly in custody for some unspecified offense in some southern State. There was no showing of any effort by anyone to have him appear as a witness.

The State's Attorney, in cross-examining Mary T. Barnes, did question her, in what we characterize as a mild and polite manner, about her relationship with the defendant. He specifically asked her about an occasion in which she pled guilty in Bismarck, North Dakota, to the offense of illegal registration, in that she registered with the defendant at a motel as his wife.

In order to show that the State's Attorney's cross-examination of this defense witness was not especially vicious or aggressive, we quote the following, which reproduces the strongest cross-examination used by the State's Attorney in this case:

Q. Mary, it is a fact that you have been living with Lucas as man and wife, is it not?

A. No, it isn't.

Q. He stayed at the house when you stayed there?

A. No.

Q. He sleeps at the house on occasion?

A. On occasion.

Q. When you are there?

A. No. I sleep down at his folks house and he stays there.

Q. Your relationship with him is strictly a business relationship?

A. That's right.

Q. It has never been anything over that?

A. That's right.

Q. Are you sure of that, Mary?

A. Yes, I am.

Q. Isn't it a fact that on January 1st of 1965, you plead guilty in Bismarck in court action to false registration in a hotel with Lucas Berger?

MR. GRAFF: I object to this, Your Honor. May we approach the bench.
((Whereupon, a discussion was had at the bench.))

THE COURT: Back on the record again.

MR. KELSCH: Will you repeat the question.
((Whereupon, the question was read by the Court Reporter.))

THE COURT: The objection will be overruled and she may answer.

A. Yes, I did.

Q. (by Mr. Kelsch) You were registered with Lucas as Mrs. Berger?

A. I was not registered with Lucas. I signed the name Mr. and Mrs. Lucas Berger for one reason.

Q. What was your reason—go ahead.

A. I had come up to meet his boy. He wanted me to meet them first and see how things were going to work out. We planned on having the boys come over to visit me so we could get to know one another and that is the only reason that I signed Mr. and Mrs. Lucas Berger because the boys were going to be there and I just thought it wouldn't look good.

Q. You didn't stay with them at that time?

A. No.

Q. You go out with Lucas on dates?

A. No.

Q. You haven't been out to a Bar with him on a social engagement with him?

A. No.

Q. Are you sure of that, Mary?

A. Yes, I am.

Q. Were you ever in cafes, bars in Bismarck with Lucas Berger drinking with him?

A. I was not drinking with him. That was the day I served my sentence. I got out and came to find Mr. Berger to get some money and go back to Sioux City.

Q. Did you go to a cafe, bar with him?

A. I didn't go with him. I found out he was there with several other persons. I walked in to get some money. I was not drinking.

Q. As it now stands you are really completely dependent on Lucas for your food, for your shelter, for what spending money you have?

A. Yes, that's my job.

Q. When Lucas asked you to make out State's Exhibit No. 5, which is a check dated February 1st, payable to Lynn Starck, he told you what information to put on the check?

A. Yes.

Q. And you made this out at his house?

A. Yes.

Q. And did he tell you anything else what this was about?

A. Nothing else.

Q. Not another word?

A. Nothing.

MR. KELSCH: That's all the questions I have.

At this point we note that trial counsel, through the course of this cross-examination, as well as elsewhere, objected frequently and sought to rehabilitate the witness on redirect examination.

The following specifications are set forth by the appellant here:

(1) That the court erred in allowing improper questioning of the defendant, and his witness Mary T. Barnes, such questioning bringing out prejudicial matters and raising unjust inferences.

(2) That the court erred in its instruction to the jury on circumstantial evidence, particularly in failing to instruct that the evidence must exclude every reasonable hypothesis consistent with innocence.

(3) That the evidence was not sufficient to justify the verdict, and that the court erred in denying the defendant's motion for a new trial, based thereon.

(4) That the court erred in denying the defendant's motion for a new trial upon the ground of newly discovered evidence.

■ With respect to the first specification above stated, this has no merit. We quote from a North Dakota case directly in point:

"The state has the right, on cross-examination, to show the nature of the relations existing between the witness and the accused, so far as their relations are such as would create a bias on the part of the witness that might reasonably be supposed to affect his testimony, and this rule cannot be changed by the fact that these relations may be such as to prejudice the accused in the minds of the jury." State v. McGahey, 3 N.D. 293, 55 N.W. 753.

The circumstances in the *McGahey* case were remarkably close to those in instant case. In this case, State v. McGahey, 3 N.D. 293, 55 N.W. 753, 757, we quote from the body of the opinion, the above quotation being from the syllabus by the court.

"Mrs. Hill was sworn as a witness for plaintiff in error. On cross-examination the state's attorney, over the objection

of the opposing counsel, was permitted to interrogate her at length as to her relations to and criminal intercourse with McGahey. This is urged as error. The able counsel does not contend that it was improper to ask the witness on cross-examination as to her criminal relations with men generally as affecting her credit, but urges that such object could be equally well attained without specifically naming McGahey, and that the necessary effect of so naming him must have been to prejudice the jury against him. Admitting counsel's conclusion, we are still of opinion that the line of cross-examination was proper. The state has the right to show the relations existing between the witness and the party at whose instance, and presumably in whose interest, she was testifying. It had the right to expose to the jury every motive and desire of the witness that might naturally and reasonably be supposed to produce that bias that would affect the character of her testimony. 1 Greenl.Ev. 450, note; Cameron v. Montgomery, 13 Serg. & R. [Pa.] 128; Batdorff v. [Farmers' Nat.] Bank, 61 Pa.St. 179; State v. Bacon, 13 Or. 143, 9 Pac.Rep. 393."

See also Underhill's Criminal Evidence (4th Ed.) 906, et seq.

■ Therefore, it was clearly allowable and clearly proper cross-examination, for the purpose of showing interest and bias, for the State's Attorney to examine Mary T. Barnes as he did.

■ With respect to Specification No. (2), pertaining to alleged error in the court's instruction, timely objections were not made to such instruction although opportunity was offered to examine and except to such instruction. The rule in this State is as follows:

" * * * Where the trial court in a criminal action submitted written jury instructions to counsel for both sides and requested that counsel make their suggestions for corrections or additions thereto before the instructions were given by the court to the jury; where there is nothing to indicate that counsel did not have a reasonable opportunity to examine the instructions; and where counsel for the defendant * * * thereafter stated that he had no * * * objections, such statement constitutes a waiver of further objections." State v. Carroll (N.D.), 123 N.W.2d 659, 660.

Approximately one hour was allowed to the attorneys to examine the instructions. No additional time was asked for. In response to inquiry by the court, defense counsel said:

"MR. GRAFF: The defendant has likewise examined the Instructions and has no exceptions or objections to the Proposed Instructions."

Under State v. Carroll, supra, defendant thereby waived objection to said instructions.

However, defendant contends that an hour's time to consider the instructions is not a reasonable time and that, therefore, the rule in *Carroll* does not apply. We have examined the instructions to determine their length and the degree of their complexity. With respect to these particular instructions, we find no merit in this contention.

■ The third specification of error relates to the sufficiency of the evidence, and this cannot be raised by defendant inasmuch as there is no motion for new trial before the court. The correct rule is stated in State v. McClelland, 72 N.D. 665, 10 N.W.2d 798, which is as follows:

"Sufficiency of the evidence to sustain the verdict, not challenged either by motion for a new trial or for an advised verdict, cannot be considered on an appeal from the judgment alone."

Specification of Error No. (4) relates to the court's alleged error in denying the motion for new trial. Said motion for

new trial is not before us, having been previously dismissed.

Counsel for appellant are not the counsel who tried the case in the court below. Counsel on appeal have made frequent reference to the alleged mistakes of trial defense counsel in this case. In oral argument, appellate counsel denied, in response to a specific question by a member of this court, that they alleged incompetency on the part of trial counsel. Also, in appellate counsel's own brief we find the following:

"We raise no question as to adequacy of counsel, * * *."

Nonetheless, there is a persistent theme in appellate counsel's brief dealing with the inexperience of trial defense counsel and, despite the disavowal of an allegation of incompetency, certain authorities cited by appellate counsel do deal with incompetency of counsel.

In this connection we are confronted by a statement, found in the judgment roll, to wit: in the order denying motion for new trial, by the district judge who presided over the trial of this case:

"* * * that the defendant's trial counsel did a creditable and conscientious job in presenting defendant's case and in defending him at the trial; * * *."

■■ The district judge who presided over the trial of this case was himself a trial attorney of wide and varied experience, both in civil and criminal law, before he went on the bench a few years ago. We have no reason to doubt his judgment in this matter, he having observed the trial. The burden of proof to show inadequacy or incompetency of counsel lies upon appellant and defendant here, and this burden he has failed to carry, since a close examination of the record does not show such inadequacy or presumed incompetency of counsel.

■ An attorney is an officer of the court. In this case the defense attorney in the court below was court-appointed, but his status as an officer of the court is thereby emphasized as he was presumably paid from State funds.

Therefore we note the provisions of Section 31–11–03, N.D.C.C., the pertinent part being:

"Disputable presumptions.—All presumptions other than those set forth in section 31–11–02 are satisfactory if uncontradicted. They are denominated disputable presumptions and may be contradicted by other evidence. The following are of that kind:

* * * * * *

15. That official duty has been performed regularly; * * *."

Evidence is required to overcome this presumption, and this had not been presented to this court, nor does it appear in a careful review of the record.

We also quote Sections 4 and 5, Canons of Professional Ethics, American Bar Association, having emphasized the pertinent parts:

"4

"When Counsel for an Indigent Prisoner

"A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason, *and should always exert his best efforts in his behalf.*

"5

"The Defense or Prosecution of Those Accused of Crime

"It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused; otherwise innocent persons, victims only of suspicious circumstances, might be denied proper defense. *Having undertaken such defense, the lawyer is bound by all*

*fair and honorable means, to·present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law.* \* \* \*" (Emphasis ours.)

The inference reflecting upon this competent young attorney, who defended appellant in this difficult case, we intend to dispel by this opinion.

Affirmed.

KNUDSON, STRUTZ and ERICK-STAD, JJ., concur.

TEIGEN, C. J., did not participate in the decision in this case.