STATE of North Dakota, Plaintiff
and Appellee,

v.

Cora KROEPLIN, Defendant
and Appellant.

Cr. No. 617.

Supreme Court of North Dakota.

May 12, 1978.

Mack, Moosbrugger, Leonard, Ohlsen & Dvorak, Grand Forks, for defendant and appellant.

Mervin D. Nordeng, State's Atty., Fargo, for plaintiff and appellee.

SAND, Justice.

The defendant, Cora Kroeplin, was found guilty by a Cass County district court jury on 27 June 1977 of the felony offense of reckless endangerment under circumstances manifesting an extreme indifference to human life, a violation of § 12.1–17–03, North Dakota Century Code.

She was charged specifically with firing "several shots from a gun into the Buffalo Repair Shop where Gary Kroeplin [her son], Melvin Kroeplin [her husband], and Lori Hill [their bookkeeper] were located."

The defendant was found · indigent, whereupon the court appointed counsel for her. She entered a plea of not guilty. Following a jury trial, she was found guilty and sentenced to eighteen months at hard labor in the North Dakota State Penitentiary. A judgment of conviction was issued and filed.

The defendant appealed the judgment of conviction to this court, contending that the trial court committed reversible error in admitting into evidence a .22 rifle, and that she was denied the effective assistance of counsel.

The original court-appointed counsel filed the notice of appeal, but by stipulation between counsel, the original counsel was replaced by current counsel, who proceeded with the present appeal.

We consider first defendant's contention that the trial court erred in admitting into evidence a .22 rifle on the alleged grounds that the prosecutor failed to lay a proper foundation for it and that there was a break in the chain of custody and improper authentication and identification of the rifle.

Defendant's counsel's objection to the introduction of the .22 rifle consisted of the following statement to the court:

"Lack of foundation. There is no showing of the custody of the rifle from the time it was—I don't know where it was taken from, Your Honor, after the incident."

This objection was overruled and the .22 rifle was received into evidence.

The testimony of the defendant's husband identified the gun (.22 rifle) as the one he purchased for his son, Randy, as the gun taken from the Kroeplin home by deputy Sheriff Franck. Randy identified it as his and said that he kept it in the corner of his room. The testimony of Gary Kroeplin identified it as being similar to or the same gun that his mother used in the shooting incident.

The prosecutor, through the witnesses, traced the chain of custody of the .22 rifle from the date an officer of the Cass County sheriff's department removed it from the Kroeplin home back to the date it was purchased by Mr. Kroeplin for his son from a Coast-to-Coast store in Casselton.

Before resolving the issue of the admissibility of the gun in this case, we observe that the evidence, without the admission of the gun, would have been sufficient and competent for the jury to find the defendant guilty beyond a reasonable doubt of the offense charged.

Eyewitness testimony established that defendant, using a rifle, shot into the door of the Buffalo Repair Shop in which several people were located at the time. This establishes a violation of § 12.1–17–03, NDCC, set out later herein. Therefore, the identification or the production of the specific rifle used was not essential to prove the charge against the defendant. The eyewitness testimony alone was sufficient. See *State v. Davis*, 229 N.W.2d 249, 251 (Iowa 1975).

The offense of reckless endangerment is set out in § 12.1–17–03, NDCC:

"A person is guilty of an offense if he creates a substantial risk of serious bodily

injury or death to another. The offense is a class C felony if the circumstances manifest his extreme indifference to the value of human life. Otherwise it is a class A misdemeanor. There is risk within the meaning of this section if the potential for harm exists, whether or not a particular person's safety is actually jeopardized."

■ The provisions of the statute are clear. Proof of possession of the weapon or of a certain gun is not an essential element of the offense charged.

■ Nevertheless, we conclude that the trial court did not commit error in admitting the gun into evidence. The evidence (gun) in this case was not too remote or conjectural. The total evidence justified a reasonable inference that the defendant and the gun were linked together and that the defendant used it in the commission of her offense. See *State v. Pieschke*, 262 N.W.2d 40, 45 (S.D.1978); *State v. Pickering*, 217 N.W.2d 877 (S.D.1974).

The mere fact that the prosecution presented more evidence than was needed does not constitute error.

In this case the gun has some relevancy to the issue and is therefore admissible. Rule 401, North Dakota Rules of Evidence; *State v. Hendrickson*, 240 N.W.2d 846 (N.D. 1976).

■ Defendant's counsel also argued that there was a break in the chain of custody of the gun because the State did not establish which officer brought the gun to the deputy sheriff's office and the time at which it was brought to the office. It was contended that there was a break in the chain of custody of the .22 rifle during the time it was in the possession of the sheriff's department.

Melvin Kroeplin testified that deputy sheriff Franck removed the gun from the Kroeplin home. Lt. Larson, a deputy sheriff, testified that the following morning the gun was brought to his office by a jailer, although he could not identify which one, or the time when it was brought to his office. Lt. Larson also testified that the gun had a green identification tag on it when it was brought to his office and that it was later taken from his office and placed in the sheriff's evidence room, where it was kept under lock except for the time it was sent to the FBI laboratory for testing. Lt. Larson testified that while the gun was in the sheriff's evidence room deputy sheriff Franck, at his request, put a yellow tag on it. Lt. Larson also testified that he identified the gun by the tags affixed to it, as the one taken from the Kroeplin home. He further testified that the gun's serial number was on the tag.

Identity and authentication are primary concerns in the admission of exhibits into evidence. Rule 901, NDREv, in substance provides that the admissibility question is satisfied by evidence which is sufficient to support a finding that the matter in question is what its proponents claim and that, generally, the testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient.

In the admission of real evidence, impervious to change, such a gun which is readily identifiable by its serial number and other characteristics, and which has been identified through testimony as being similar to the gun in question, a showing of a continuous chain of possession is not as important as it is with reference to items or objects which can be easily diluted, altered or even substituted. McCormick on Evidence (2d ed.) *Demonstrative Evidence*, Ch. 21, § 212, p. 527. See also, *American Reciprocal Insurers v. Bessonette*, 241 Or. 500, 405 P.2d 529 (1965); *State v. Coleman*, 441 S.W.2d 46 (Mo.1969); *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60 (2d Cir. 1969).

In *State v. Motsko*, 261 N.W.2d 860, 868 (N.D.1978), we noted appellant's chain of custody argument that there was no showing of how the pipe, the weapon in question, was transported from the car to the spot where it was found near the house. However, we said that this went to the weight of the evidence, not its admissibility. This also applies here.

We agree with the reasoning of the Iowa Supreme Court in *State v. Limerick*, 169 N.W.2d 538, 541 (Iowa 1969):

"In passing on the admissibility of exhibits where a break in the chain of custody is shown, we have ordinarily held the failure to account for undisturbed possession goes to the weight of the evidence rather than its admissibility. *State v. Shilinsky*, 248 Iowa 596, 599, 81 N.W.2d 444; *State v. Ford*, 259 Iowa 744, 748, 749, 145 N.W.2d 638. We have consistently applied this rule and held the evidence properly admitted as within the discretion of the trial court where the exhibits consisted of solid objects, not easily susceptible to undetected alteration, such as money, *State v. Shilinsky*, supra; hammer and gun, *State v. Ford*, supra; a gun, *State v. Johnson*, Iowa, 162 N.W.2d 453; clothing and a body, *State v. Parker*, 261 Iowa 88, 151 N.W.2d 505, 508; matches and glasses, *State v. Post*, 255 Iowa 573, 123 N.W.2d 11. Where the possibility of alteration of an exhibit is slight, the materiality of the alteration remote, and the exhibit has otherwise been properly identified we have dispensed with a showing of continuous custody."

See also, *State v. Ash*, 244 N.W.2d 812, 816 (Iowa 1976).

At the very least, the gun constituted circumstantial evidence corroborating the testimony of other witnesses.

In *State v. Emmil*, 172 N.W.2d 589, 591 (N.D.1969), we said:

"All of this is, of course, circumstantial evidence. The law does not require that every fact going to make up a case be proved by eyewitnesses, or by direct evidence. In criminal as well as in civil cases, issues may, generally speaking, be established by circumstantial evidence. 30 Am.Jur.2d, Evidence Sec. 1091, p. 248.

"This court has held that there is no legal distinction, so far as weight and effect to be given is concerned, between circumstantial evidence and direct evidence. *State v. Foster*, 14 N.D. 561, 105 N.W. 938 (1905)."

On the same subject, in *In re J. Z.*, 190 N.W.2d 27, 35 (N.D.1971), we observed:

"The appellants' counsel contends that the evidence in this case lacks probative force because it is largely, if not entirely, circumstantial. But that is not the law in this State. Proof of the elements of an action or proceedings may consist entirely of circumstantial evidence. *State v. Emmil*, 172 N.W.2d 589 (N.D.1969) . . ."

Defendant's counsel also argued that admission of the gun into evidence was so prejudicial as to amount to reversible error. However, he made no showing, or even a valid suggestion, as to how the prejudice occurred, and in the absence of such a showing we do not find it necessary to discuss this issue.

We now consider defendant's second issue on appeal, that she was denied the effective assistance of counsel due to counsel's conduct in the following instances:

1. Counsel initiated no pretrial discovery or motions for the suppression of physical evidence or the impeachment of testimony.

2. Counsel did not allow Mrs. Kroeplin, the defendant, to testify.

3. Counsel, in his opening statement, commented unfavorably on defendant's not taking the stand.

4. Counsel failed to make a motion for judgment of acquittal when the evidence was insufficient to support the charge.

5. Counsel failed to object to jury instructions which improperly blurred the distinction between felony and misdemeanor reckless endangerment.

■ It is well established that defendant has a Sixth Amendment right to the effective assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State v. McKay*, 234 N.W.2d 853, 856, 857 (N.D.1975). In *State v. Berger*, 148 N.W.2d 331, 337 (N.D.1967), we said that the burden of proof to show inadequacy of defense counsel lies with the defendant. We also said that defense counsel in a criminal case is presumed to be compe-

tent and adequate, and evidence is required to overcome this presumption. *Berger, supra,* at 337.

■ The standard of effective counsel, as adopted by this court in *State v. Bragg,* 221 N.W.2d 793 (N.D.1974), and reiterated in *State v. McKay,* 234 N.W.2d 853, 857 (N.D. 1975), and *State v. Motsko,* 261 N.W.2d 860 (N.D.1978), is "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *West v. State of Louisiana,* 478 F.2d 1026, 1033 (5th Cir. 1973).

■ Having examined the record, we conclude that there is no showing that defense counsel was incompetent.

Defendant's counsel on appeal claims that defendant's court-appointed counsel at trial initiated no pretrial discovery or motions for the suppression of physical evidence or the impeachment of testimony. However, defendant's counsel on appeal in his brief has neither alleged nor established specifically the area in which no preparation was made or how the lack of preparation, if any, prejudiced defendant's case.[1]

We have already concluded that the admission of the gun into evidence was not essential to the State's case and that the State's evidence, without the gun, was sufficient to convict the defendant. We accept the reasoning of the Wisconsin Supreme Court in *Weatherall v. State,* 73 Wis.2d 22, 242 N.W.2d 220, 225 (1976), United States *cert. den.* at 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976), where it stated that:

"... it is the conduct of the trial, not the preparation, that is to be analyzed and reviewed when a claim of incompetency of trial counsel is made. Prejudice to the defendant must be alleged and established deriving from either a failure to inspect a document or to allot a certain number of hours or days to preparation."

In this instance no showing was made that defendant was denied adequate representation by her counsel's conduct in preparing for trial.

■ Defendant did not testify on her own behalf. But, there was no showing made as to whether this decision was made by defendant alone or upon the advice of her court-appointed counsel. Assuming it was made upon the advice of counsel, we fail to see how defendant has been denied her right to adequate representation where there is nothing in the record to show that the advice, if given, was without reason. See *State v. Armstrong,* 282 Minn. 100, 163 N.W.2d 67 (1968).

■ Trial counsel, in his opening statement, commented on defendant's not taking the stand:

"Ladies and gentlemen of the jury, at this time I have the right to make an opening statement and I am going to make a very brief statement. I am going to call three witnesses. There is one witness I am not going to call and I have to apologize to the jury for not doing so. During the course of a trial there are times when things happen that are between myself and my client and/or other matters that happen sometimes it becomes impossible to call someone or for many other reasons. Therefore, I promised I would call the defendant. I will not do so. Later on the Court will instruct the jury on the failure to appear."

The court instructed on the defendant's action in not testifying on her behalf:

"In the trial of a criminal action before any Court of this State, the Defendant, at her own request and not otherwise, is a competent witness. If the Defendant chooses not to testify during the trial, her mere silence does not create or raise any inference of guilt against her. The attorney prosecuting the case cannot mention it and you must not discuss or consider it."

It is evident from trial counsel's opening statement that he had anticipated calling the defendant to testify, and that he had promised the jury that he would call her to

---

1. Counsel did not appear on appeal and we do not have the benefit of his oral argument.

the stand. His opening statement was an attempt to prepare the jury for defendant's action in not taking the stand and to explain why. See, e. g., *People v. Burd*, 39 Mich.App. 22, 197 N.W.2d 76, 77 (1972).

We conclude that counsel's opening statement did not prejudice defendant. Certainly counsel did not want to give the jury the impression that because his client was not going to take the stand she was guilty. In any event, the jury instruction given by the court was sufficient to counteract any unwarranted inference of guilt that might have been transmitted to the jury by counsel's statement and defendant's silence.

▆ Finally, defendant's counsel on appeal claims that court-appointed trial counsel rendered inadequate representation by failing to make a motion for judgment of acquittal and by failing to object to jury instructions which improperly blurred the distinction between felony and misdemeanor reckless endangerment.

A motion for judgment of acquittal made by counsel at trial could not have been properly granted by the court; therefore, counsel cannot be faulted for electing not to make that motion. See, *State v. Tahash*, 273 Minn. 187, 140 N.W.2d 692, 698 (1966). We find that we must once again repeat that the evidence presented by the State was sufficient to sustain the jury's conviction of defendant for the offense charged.

The argument that trial counsel should have objected to the court's standard instruction on intent as blurring the distinction between felony and misdemeanor reckless endangerment is totally without merit.

The instruction given reads as follows:

"The intent or purpose with which an act is done is a mental process and as such generally remains hidden in the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence. Intent may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending the acts sought to be proved against the accused. It is presumed, however, that an unlawful act was done with an unlawful intent."

Defendant's counsel on appeal charges that the final sentence of this instruction "bootstrapped the misdemeanor into a felony."

In this respect we note that a separate instruction was given to distinguish felony from misdemeanor reckless endangerment:

"The crime of reckless endangerment is divided by North Dakota law into two classes. If the act of creating a substantial risk of serious bodily injury or death is done under circumstances manifesting an extreme indifference to the value of human life, it is a more serious crime than if the circumstances do not manifest such extreme indifference.

"The State in this case has charged that the more serious crime has been committed, and that the Defendant did act under circumstances manifesting her extreme indifference to human life. It is the burden of the State to prove this allegation of extreme indifference beyond a reasonable doubt. If the State has proved beyond a reasonable doubt that Defendant committed the crime of reckless endangerment, but fails to prove beyond a reasonable doubt that the act was done under circumstances manifesting extreme indifference to the value of human life, you should find the Defendant guilty of the less serious charge."

▆ Only a general intent is required for the offense of reckless endangerment. The felony class of reckless endangerment is distinguished from the misdemeanor class by the presence of circumstances which manifest an extreme indifference to the value of human life.

▆ On prior occasions we have stated that jury instructions must be considered as a whole, and when, as a whole, they correctly advise the jury as to the law, the instructions are sufficient. *State v. Piper*, 261 N.W.2d 650, 656 (N.D.1977); *State v. Williams*, 150 N.W.2d 844 (N.D.1967). The jury instructions in the instant case are clear and are not misleading when taken as a whole. Selecting only a part of the in-

structions without considering the jury instructions as a whole, as attempted by counsel on appeal, is not proper because it can result in erroneous and misleading inferences.

In *State v. Motsko*, 261 N.W.2d 860 (N.D. 1978), we said:

"  .  .  .  It is not our function to allow second-guesses on trial strategy [*Waletzko v. Herdegen*, 226 N.W.2d 648 (N.D.1975); *Rummel v. Rummel*, 234 N.W.2d 848 (N.D.1975)]."

Similarly, it is not the function of new counsel, nor should new counsel be allowed to second guess on matters relating to trial strategy. Trial counsel was in a better and more advantageous position than new counsel. From the discussions had with his client he was able to determine what he believed best under the circumstances. It is also reasonable to believe that trial counsel on the basis of information that he acquired from his client had reasons to believe that certain testimony would be damaging or that certain evidence would be produced, and reacted accordingly. We cannot now seriously entertain the second guesses of new counsel who has not even given us the benefit of appearing for oral argument, at which he could have elucidated on the matter and at which he would have been subjected to further examination by the court on the charge of incompetency.

Under such circumstances we do not find it appropriate to explore the record to determine whether or not counsel should have acted differently or more appropriately. A challenge of this kind (incompetency) in our view requires the challenger to point out with specificity or particularity how and where the trial counsel was incompetent and the probable different result. In absence of any such showing we are compelled to reject the contention that trial counsel acted incompetently.

For the reasons stated earlier herein, we affirm the trial court's judgment of conviction and sentence.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.