STATE of North Dakota, Plaintiff and Respondent,

v.

Samuel C. Parker PANDOLFO, Jr., Defendant and Appellant.

Cr. No. 294.

Supreme Court of North Dakota.

Dec. 12, 1960.

E. J. McIlraith, Minot, for defendant and appellant.

Leslie R. Burgum, Atty. Gen., William S. Murray, Sp. Asst. Atty. Gen., for plaintiff and respondent.

SATHRE, Chief Justice.

This is a criminal case. The defendant was convicted in the District Court of Burleigh County by a jury of the crime of wilfully, unlawfully and fraudulently making and filing a sworn application to the Securities Commission for registration as a salesman of Securities, and knowingly subscribing to, or causing to be made, material false statements in said application for such registration, in violation of Section 10-0410, 1957 Supplement NRDC 1943.

The instant case and a companion case were on the calendar for trial at the December 1958 term of the District Court of Burleigh County. The companion case was tried in December 1958 and resulted in conviction. The defendant appealed to this Court and the conviction was affirmed. N.D., 98 N.W.2d 161. The instant case was continued from time to time and finally set for trial January 19, 1959.

When the case was called for trial the defendant's attorney stated to the court that he appeared only for the purpose of arguing a motion for continuance and that he could not appear for the defendant in the instant case because he was going to Denver, Colorado and would "not be back until Friday", whereupon he left the courtroom.

After his attorney had withdrawn from the case the defendant presented a motion for continuance supported by a lengthy affidavit in which he stated that he had been unable to obtain legal counsel to represent him in the action; that he had contacted several firms of attorneys in the cities of Minot, Fargo, Mandan, Bismarck and Dickinson. In the affidavit it is further stated that the affiant's brother had recently been killed in an automobile accident in the State of Wyoming and that the affiant desired an opportunity to attend the funeral.

After some discussion between the defendant and the Court with reference to counsel the defendant stated:

"I did not know my brother was going to get killed four days ago. I have contacted Mr. Murray, explained the circumstances, and asked him for a continuance in this case, and I feel as though if under the circumstances I am forced into it due process has not been shown me.

"The Court: In what respect?

"Mr. Pandolfo: Under the conditions outlined in the affidavit filed with the Court, and the other circumstances that have happened, and I have no counsel.

"The Court: That last one is the only one I see any merit to and I don't understand why you can't get a lawyer without too much delay. Are you unable to secure an attorney in this community?

"Mr. Pandolfo: Your Honor, in this affidavit it clearly sets forth the firms that I have contacted.

"The Court: I have read all that. * * * * * *

"The Court: At least a week or ten days ago Mr. Mills told me that he wanted more time. We talked it over then, and I told him, after we talked it over, that he could only have until today, that our own schedules are fixed, mine is fixed, I have more work to do, other judges have work to do; we have this jury coming today and that he had to adjust to it some way because I wouldn't be in a position to continue this case any longer than today. He knew all that. And you mean to tell me that in those ten days you haven't been able to find a lawyer?

"Mr. Pandolfo: I think the facts that I presented to you indicate that I have counsel. I have employed counsel and they cannot get here today.

"The Court: What assurance are you going to give the Court you will have counsel at any later time? You have already had a week or ten days and this is only a misdemeanor.

"Mr. Pandolfo: I understand that. * * *"

The attorney for the State then made the following statement:

"I want this man to be properly defended, naturally. Mr. Mills is the attorney best qualified to do so and I

want to make it perfectly clear that the State won't object to him both trying the case and testifying, and if anyone tries to offer any criticism of Mr. Mills' ethics for doing so I certainly will go to bat for him.

"The Court: Well, with that concession on the part of the State what objection is there to Mr. Mills going ahead with it?

"Mr. Pandolfo, why can't he do it? Has he left town already?

"Mr. Pandolfo: I beg your pardon?

"The Court: Have you any objection to Mr. Mills trying the case if it is possible for him to do so?

"Mr. Pandolfo: Mr. Mills has withdrawn from this case, Your Honor.

"The Court: You didn't answer my question, Sir.

"Mr. Pandolfo: I do have an objection to Mr. Mills trying the case and being the chief witness at the same time.

"The Court: In the face of this statement by the Attorney General?

"Mr. Pandolfo: I am not an attorney, Sir. I wish to call the court's attention to that.

"The Court: You are appearing for yourself and I call your attention to that, and I ask you if you heard Mr. Murray just now making the statement he would have no objection to it?

"Mr. Pandolfo: Your Honor, I am not an attorney, I don't know. I do believe the same rule as Mr. Murray pointed out in the first trial can be reversed in the second trial, I don't know. Mr. Mills has withdrawn from this case. I think I presented plenty of reasons why I should not be tried today.

"The Court: If he hasn't left town I might deny your motion right now.

"Mr. Murray: I move or suggest that the Court allow him a recess to reach Mr. Mills.

"The Court: Mr. Pandolfo, we will take a recess for 10 or 15 minutes, until you can get ahold of Mr. Mills and see what he has to say. Do you understand that this application for a continuance must be utterly in good faith, and I take the position right now that if Mr. Mills is willing to go ahead with this case now there isn't any reason he can't do it. We will take a recess of 15 minutes to see what you can find out."

A recess was then taken from 10:40 a. m. to 11:20 a. m.

After recess the following proceedings were had: The Court:

"Mr. Pandolfo: The Court has instructed the State to go ahead with the arraignment, and I understand you at the present time do not have any lawyer; that is true, isn't it?

"Mr. Pandolfo: That is true, Sir.

"The Court: And I have already heard your explanation or efforts that you made to get one, and you state you can't get one at this time?

"Mr. Pandolfo: I wish to qualify my answer, your Honor. I have three counsel engaged; they are unable to be here.

"The Court: I have heard all that, but you haven't got any of them here. Do you wish the Court to appoint an attorney for you?

"Mr. Pandolfo: I do not, your Honor. I wish to have time to secure attorneys.

"The Court: This is only a misdemeanor, and I don't know whether the situation warrants any more time or not. I don't see any reason why, with your experience, you are not able

to proceed without an attorney at this time on the initiation of the proceedings.

"Mr. Pandolfo: On the arraignment?

"The Court: Yes, Sir.

"Mr. Pandolfo: That is all right, Sir."

Arraignment was then had and the defendant entered a plea of not guilty. The Court then informed the defendant that he would be given until 9:30 a. m. the following day to secure a lawyer.

"Then lawyer or no lawyer we will try this case."

The defendant thereupon made the following statement to the Court:

"If this Court will agree, Sir, tomorrow morning for me to get the evidence and tell my story and cross-examine the witnesses, and to bring in the assistant deputy that handled this license application, the Court has ordered me to try it, I will be ready, Sir. In the meantime, I shall try to procure counsel.

"The Court: Fair enough. Do that. We will try this case at 9:30 A.M. tomorrow morning."

The case was called for trial the following day at 9:30 a. m. and Pandolfo informed the court that he had been unable to secure counsel and that he was willing to represent himself and that he was ready to proceed with the trial of the case acting as his own counsel.

The case was tried to the court and jury, the defendant acting as his own attorney. The jury returned a verdict finding the defendant guilty and judgment and sentence was entered thereon.

Thereafter in due time the defendant made a motion for a new trial which was denied, and the defendant appealed from said Order and from the Judgment of Conviction and assigned the following specifications of error:

That the trial court abused its discretion in denying defendant's motion for a continuance and thereby preventing him from securing counsel to conduct his defense.

That the Court erred in its instructions to the jury.

That the Court erred in reading to the jury a certain bill of particulars furnished to the defendant by counsel for the state, defendant's exhibit "H".

That the Court erred in insisting that the case be tried with or without counsel for defendant.

We shall consider the specifications in the order stated.

 With reference to the first specification the record shows that the trial of the case was continued at the request of the defendant from December 9th to January 6th, 9th, 12th and finally January 19th. In his affidavit in support of his motion for continuance he stated he had contacted firms of lawyers in five cities in North Dakota, but that the attorneys contacted were otherwise engaged and were unable to represent him. He stated also that he had engaged certain lawyers in Denver, Colorado, but they were occupied in trying cases in Federal Court and for that reason were unable to act as his counsel. The situation thus presented is unique. It would seem that among the several firms of lawyers solicited by the defendant at least one attorney would be available to represent him. But even though defendant was unable to secure counsel the evidence shows that he was not a stranger to court procedure. He had been tried and convicted of similar offenses in other states, including Montana and Colorado, and as noted herein had recently been tried and convicted of a like offense in North Dakota. The trial court offered to appoint counsel for him but he refused the offer, and he also refused to

be represented by Mr. Mills who was his attorney when the case was called for trial. The prosecuting attorney and the court treated him fairly in every respect, made suggestions as to procedure and took no advantage of any procedural error on the part of the defendant in conducting his own defense. Under the circumstances and the record before us we cannot say the defendant was prejudiced because of the fact that he conducted his own defense without the assistance of counsel.

The general rule applicable in such cases is stated as follows in 23 C.J.S. Criminal Law § 1437, page 1140.

"As a general rule, denial of the right to be represented by counsel is grounds for a new trial; but the mere fact that accused was not represented by counsel is not grounds for a new trial, at least where no injury resulting therefrom is shown, although it may be generally considered as a fact relevant to the question whether accused has been accorded full opportunity to make his defense. Ordinarily, to warrant a new trial, there must have been a denial of counsel by the court or by the State. So, where the evidence clearly is sufficient to sustain a conviction, accused is not entitled to a new trial on the ground that he was not represented by an attorney, in the absence of anything to show that he was fraudulently imposed upon and prevented from employing an attorney. If accused, knowing of his right to have counsel assigned, fails to request one or refused to accept the one assigned, he cannot complain on a motion for a new trial that he had no counsel, and dissatisfaction with counsel appointed is not equivalent to denial of counsel in this connection."

█ It is next contended that the court erred in his instructions to the jury. After the defendant had examined the instructions the following discussion was had by the court and the defendant:

"The Court: This is the time set for the defendant to make any objections he desires to the proposed instructions. Go ahead, Mr. Pandolfo.

"Mr. Pandolfo: I make an objection to these proposed instructions because in my opinion they do not fully set forth the law under which the State is basing its case.

"The Court: What does it omit?

"Mr. Pandolfo: My objection was that it fully does not explain the law. It states on the 4th page, in the last paragraph, subsection 1, of Sec. 10-0415 NDRC 1943 which reads as follows:

" 'It shall be a fraudulent practice and it shall be unlawful for any person knowingly to subscribe to, or make or cause to be made, any material false statement or representation in any application, financial statement or other document or statement required to be filed under any provisions of this (Chapter)' ".

"No reference after that, it doesn't fully state the law bearing to my case, I believe."

"The Court: What else have you got?

"Mr. Pandolfo: Just my general objection, your Honor.

"The Court: Objections overruled.

"Mr. Pandolfo: I understood the objection is overruled?

"The Court: Yes. Have you got any more?

"Mr. Pandolfo: I have no further comments, your Honor?"

In his brief defendant argues that the trial court erred in failing to explain and define the term "fraudulent practice." He overlooks the fact that the term is explained and defined by the language of the

statute. It states: "It shall be fraudulent practice and it shall be unlawful for any person knowingly to subscribe to or cause to be made, any material, false statement or representation in any application, financial statement or other document or statement required to be filed under any provisions of this Act."

The statute states in clear, specific and unmistakable language that "it shall be fraudulent practice * * * for any person knowingly to subscribe to * * * or cause to be made, any material false statement or representation in any application, etc."

We assume that the members of the jury possessed ordinary intelligence and that they had no difficulty in understanding the meaning of the term "fraudulent practice" as defined in the statute.

■ The next contention of the defendant is that the court erred in reading to the jury a bill of particulars furnished by the state to the defendant. The bill of particulars is a somewhat detailed explanation of the offense with which the defendant is charged. He introduced it in evidence as his exhibit "H". He himself read it to the jury. It was his exhibit, introduced by himself. Under these circumstances we fail to see how he would be prejudiced because the court read it to the jury as part of his instructions.

It is finally argued that the court erred in insisting that the case be tried without counsel for the defendant. This specification is practically the same as the first specification, and the views we expressed in reference to same are applicable here. As pointed out herein the trial was continued at defendant's request from time to time, to enable him to secure a lawyer and it seems rather strange that not one lawyer in any of the law firms whom the defendant claims he contacted was available. Be that as it may, the defendant agreed to act as his own lawyer and conducted his own defense.

As pointed out herein the defendant stated that he did not want the lawyer who argued his motion for continuance to act as his counsel because he was to be one of defendant's witnesses notwithstanding the attorney general's statement that the State had no objection thereto.

It is clear from the record before us that it was defendant's own fault that his counsel withdrew from the case.

Both the court and the prosecuting attorney urged the defendant to retain his attorney to conduct his defense but he refused to do so, notwithstanding the attorney had recently defended him in a case in which he was charged with a like offense. Under the facts and circumstances as disclosed by the record before us there is room for doubt as to whether the several maneuvers of the defendant and his counsel were made in good faith, or whether they were made for the purpose of obtaining further delay of the trial. In any event, as we have pointed out, it was defendant's own fault that he did not have a lawyer to conduct his defense, and therefore he is not now in a position to complain.

The order denying the motion for a new trial and the judgment are in all things affirmed.

TEIGEN and STRUTZ, JJ., concur.

BURKE, Judge (concurring specially).

I concur in the opinion filed by Chief Justice SATHRE. I think, however, that reference should be made to an additional statement of the defendant as shown by the record. This statement is as follows:

"Your Honor, as you stated, this is merely a misdemeanor, it is not a real serious offense from one viewpoint. Mr. Mills vanished for the reason that there are 59 charges of mail fraud filed against me and Universal Securities in that indictment, and each can carry five years, which is a total

of 295 years. Counsel is trying to protect Universal Securities and my position in that. That is why he did not care to linger; it is important 295 years and 59 counts of mail fraud is not a misdemeanor your Honor."

From this statement it clearly appears that the reason defendant's counsel was not present to represent the defendant in the instant case was because defendant, himself, had sent his counsel away to attend to other business for him and did so at a time when, according to his own statements, he knew he could not obtain other counsel to try the case. It is thus clear that defendant was not unable to obtain counsel, and that his failure to have counsel to represent him in this case was due to his own deliberate act. His complaint on this score is clearly not meritorious.

BURKE and MORRIS, JJ., concur.