UNITED STATES of America,
Plaintiff-Appellee,

v.

Fred C. TALLANT, Sr., and William M.
Womack, Jr., Defendants-Appellants.

No. 75–4244.

United States Court of Appeals,
Fifth Circuit.

March 7, 1977.

E. Lewis Hansen, Atlanta, Ga., Carl L. Shipley, Washington, D. C., for defendants-appellants.

John W. Stokes, U. S. Atty., Dorothy T. Beasley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and HILL and FAY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In connection with the intrastate offering and sale of securities of the Preferred Land Corporation, Fred C. Tallant, Sr. and William Womack, Jr., as officers, directors, and control persons, were indicted for violation of the general antifraud section of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), the federal mail fraud statute, 18 U.S.C.A. § 1341, and of the federal conspiracy statute, 18 U.S.C. § 371. Because of falsification and presentation of such records to the Securities and Exchange Commission (S.E.C.) for examination in violation of 18 U.S.C.A. § 1505,[1] appellant Womack was

---

1. Counts 1 to 5 cover the general fraud violations of 15 U.S.C. § 77q(a), counts 6 to 10 set forth the mail fraud violations, count 11 sets forth the conspiracy violation, and count 12 presents the obstruction allegation.

indicted individually for obstruction of the proper administration of the Securities Act of 1933.

After repeated pre-trial attacks,[2] both Tallant and Womack pleaded, just prior to trial, *nolo contendere* to all counts of the indictment.[3] On appeal from the conviction on a plea of *nolo*, eleven errors are set forth.[4] Of those items of error properly before this Court, we find them to be without merit and affirm the convictions.

**2.** The extensive and forceful nature of these skirmishes is revealed by the following history of this case which has been much litigated in this and other courts. Tallant and Womack have previously sought a determination that the indictment was improperly obtained. In December 1974 this Court in *Preferred Land Corporation v. Stokes*, 5 Cir., 1974, 505 F.2d 733, affirmed the District Court's denial of injunctive relief seeking to prevent the United States attorney from obtaining the indictment.
On April 22, 1974, before the appeal to the Fifth Circuit of the District Court's denial of injunctive relief, the defendants and Preferred Land Corporation filed a petition for a writ of mandamus against the District Court judge alleging the United States attorney improperly obtained the indictment. *Preferred Land Corp., et al. v. Hon. Charles A. Moye, Jr.*, 5 Cir., No. 74–2030. This Court denied the petition on May 3, 1974. This same issue was presented to the Supreme Court in a motion to file a petition for a writ of prohibition or mandamus. The motion for leave to file the petition was denied. *Tallant and Womack v. Charles A. Moye, Jr.*, 1974, 419 U.S. 821, 95 S.Ct. 156, 42 L.Ed.2d 128.
Other litigation related to this case includes *Preferred Land Corporation*, D.D.C., 1974, No. 74–69; *Preferred Land Corporation, et al. v. Securities and Exchange Commission*, D.D.C., 1974, No. 74–559, aff'd., D.C.Cir., 1975, 511 F.2d 448; *Preferred Land Corporation v. John H. Pratt, etc.*, D.C.Cir., 1974, No. 74–1484.

**3.** For Tallant, the *nolo contendere* plea covered counts 1 through 11 and for Womack counts 1 through 12.

**4.** In their brief, the eleven errors cited are outlined as follows.
1. Whether the grand jury returning the indictment was randomly selected from a fair cross section of the community.
2. Whether the indictment should have been dismissed because one of the grand jurors was disqualified as a convicted felon.
3. Whether the trial court properly refused to permit appellants to inspect the grand jury minutes to determine whether that body was

Many of the errors are not reachable from a *nolo* conviction.

*Non-Jurisdictional, Non-Appealable*

■ The initial consideration before this Court on any appeal from a conviction founded on a *nolo contendere* plea is what form of error is appealable. Prior decisions clearly indicate that only jurisdictional defects in the proceedings below may be considered by this Court on appeal. *United*

prejudiced by pre-indictment publicity causing a denial of due process.
4. Whether the District Court properly refused to grant appellants permission to inspect grand jury minutes to determine whether the United States Attorney substituted his judgment for that of the grand jury causing a denial of due process.
5. Whether the District Court should have dismissed the indictment on grounds of prejudicial pre-indictment publicity.
6. Whether the indictment was invalid because inherently prejudicial by reason of misjoinder of parties and offenses.
7. Whether the indictment charges acts which are offenses within the criminal jurisdiction of the federal courts.
   A. Under § 17 of the Securities Act of 1933 (15 U.S.C.A. § 77(q)(a)).
   B. The indictment does not charge an independent mail fraud offense.
   C. The indictment does not charge acts constituting an offense under 18 U.S.C.A. § 1505 (obstruction of justice).
   D. The indictment does not charge an offense under 18 U.S.C.A. § 371 (conspiracy).
8. Whether the United States Attorney abused his discretion by procuring the indictment on the basis of the grand jury's misunderstanding of the law.
9. Whether Section 17 of the 1933 Act is constitutional.
10. Whether the district court incorrectly imposed fines or penalties on appellants.
11. Whether the indictment was unauthorized by the United States Attorney General and obtained in violation of Section 20 of the Securities Act of 1933.
One other error, a jurisdictional one listed as an "issue presented" but not subsequently briefed in Appellants' brief or orally argued, is the expiration of the statute of limitations. This fails as the indictment on its face clearly alleges acts occurring within the five-year statute of limitations imposed by 18 U.S.C.A. § 3282. See *United States v. Ashdown*, 5 Cir., 1975, 509 F.2d 793, 797–98.

*States v. Winter*, 5 Cir., 1975, 509 F.2d 975, 978 n. 8; *United States v. Chaiken*, 5 Cir., 1973, 489 F.2d 1052; *United States v. Mizell*, 5 Cir., 1973, 488 F.2d 97; *United States v. Drummond*, 5 Cir., 1974, 488 F.2d 972; *United States v. Sepe*, 5 Cir., 1973, 486 F.2d 1044, aff'g, 474 F.2d 784.[5]

Of the eleven defects alleged on appeal, those numbered 1, 2, 3, 4, 5, 6, 8, 10,[6] and 11 are nonjurisdictional. Consequently, these contentions may not be considered by this Court on appeal.

5. In *United States v. Winter, supra* at 978 n. 8, we outlined the types of appealable issues following a *nolo contendere* or guilty plea. The jurisdictional defects mentioned included failure of the indictment to state a claim, the unconstitutionality of the statute underlying the indictment, the expiration of the statute of limitations, or the trial court's lack of jurisdiction over the subject matter or the persons of the defendants. Additionally, we explicitly disapproved the then current practice of District Courts accepting a plea conditioned on an agreement between the government and the defendant allowing for non-jurisdictional defects to be raised on appeal. *United States v. Sepe, supra.*

6. Furthermore, regarding the fines and sentence imposed, only in extreme circumstances, not present here, will a sentence imposed within the statutory maximum be disturbed on appeal. See *United States v. Menichino*, 5 Cir., 1974, 497 F.2d 935, 945. We find no such circumstances in this securities—mail fraud—obstruction of justice case.

7. § 77q. Fraudulent Interstate Transactions
    (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
        (1) to employ any device, scheme, or artifice to defraud, or
        (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
        (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
    (b) It shall be unlawful for any person, by the use of any means or instruments of trans-

*Jurisdictional—Appealable*

In one of their jurisdictional attacks, Tallant and Womack contend that § 17(a) of the Securities Act of 1933 (1933 Act), 15 U.S.C. § 77q(a),[7] is unconstitutional because it makes "unlawful future acts that 'would operate as a fraud' as distinguished from present or past acts that do not operate as a fraud." Essentially, because these purchasers received the same class of stock at the same price, the appellants' argument is that no purchaser sustained a loss by receipt of stock owned or controlled by Tallant or Womack rather than the original issue stock they believed they were purchasing.[8]

portation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.
    (c) The exemptions provided in section 77c of this title shall not apply to the provisions of this section.

8. This "future act" argument is directed at the allegations in Count 1, paragraph 1 of the indictment and those counts which incorporate this provision by reference. In Count 1, paragraph 1(g), the indictment alleges the following.
    "(g) Defendants caused said shares of PLC Class A common stock so acquired by said close corporations and by defendant TALLANT and said custodian from time to time to be sold to PLC investors at the then current offering price *as original issue stock of PLC* pursuant to the representation that the proceeds from the sales thereof would be used for specified corporate purposes of PLC when, as defendants at all said times well knew, said shares were not original issue stock of PLC and the proceeds from the sales thereof would not be used for any corporate purposes of PLC, but instead, would be and were diverted to the use and benefit of defendants." (Emphasis added).
    The prospectus for this stock issuance states ". . . shares of Class A Common Stock *of the Corporation* are offered by this Prospectus. . . ." (Emphasis supplied). The portion of the prospectus describing use of the proceeds from the sale of Class A common stock states that "Approximately 90% of these funds will be used in pursuing the primary objective of the Corporation in

Section 77q(a) speaks in terms of that ". . . operates or would operate as a fraud or deceit upon the purchaser." Additionally, the 1933 Act makes unlawful the making of untrue statements of material fact or the omissions of such a fact. 15 U.S.C.A. § 77q(a). It is not the occurrence of a dollar loss as a result of the actions, statements, or omissions which is unlawful under the 1933 Act. Among the purposes of this Act, one was to insure purchasers of securities full, truthful, and accurate information on which to base their security transactions decisions and to protect them from fraud and misrepresentation. I L. Loss, Securities Regulation, 178 (2d ed. 1961). As a result, an unlawful act may [9] arise when the failure to convey information in accordance with this goal occurs. The nutshell essence of the violation in this case is that § 77q was violated when Preferred Land stock was offered for sale as ostensibly original issue stock and not for that it was, already issued shares in the hands of controlling interests.

In this case, when the purpose of unlawful acts under the 1933 Act are recognized, it is evident that the "unlawful future act" unconstitutional argument is invalid. The actions *already committed* by Mr. Tallant and Mr. Womack were and are unlawful under § 17q(a) of the 1933 Act.[10]

The remaining jurisdictional issues are raised under No. 7, in note 4 above, which questions whether (a) the acts alleged in the indictment are within the criminal jurisdiction[11] of the federal courts, (b) an independent mail fraud offense is presented, (c) the indictment charges acts which constitute obstruction of justice, and (d) the indictment charges acts which constitute conspiracy. None of these items presents a valid jurisdictional error.

Under 15 U.S.C.A. § 77v[12] jurisdiction of offenses and violations of the 1933

purchasing, developing and sale of real property and other necessary expenses appertaining thereto. The remaining 10% of such funds will be used as general working capital."

On the basis of this, a purchaser of stock could have expected to purchase stock the proceeds of which, at least in part, would be received by the corporate entity. However, when they received shares owned or controlled by Tallant or Womack, the proceeds from the sale of already issued stock did not go into the corporate treasury or any other corporate account.

9. "May" is used because other prerequisites must exist, e. g., use of an instrumentality of interstate commerce or the mail, before an act is unlawful under the 1933 Act.

10. The bluntest method of disposing of defendants' constitutional argument is to quote Professor Loss. "The question of constitutionality of the SEC statutes generally belongs to a bygone day." I L. Loss, Securities Regulation, 178 n. 1 (2d ed., 1961).

11. Part of the confusion in the oral argument before this Court and written argument in the briefs is the belief that the general fraud provision, § 17(a) of the 1933 Act, 15 U.S.C.A. § 77q(a), is purely civil whereas the penalty provision under § 24 of the 1933 Act, 15 U.S. C.A. § 77x, is criminal. This view is myopic. The general fraud section, 77q(a), makes certain fraudulent acts unlawful. On the basis of such an unlawful act, both civil and criminal consequences may flow. An injunction, a non-criminal remedy, may be sought under the Securities Act § 20(b). Also, a criminal penalty may be imposed under § 77x. See *Crooker v. Securities and Exchange Commission*, 1 Cir., 1947, 161 F.2d 944, 947; *see generally* III L. Loss, Securities Regulation, 1421–30 (3d ed. 1961).

12. § 77v. Jurisdiction of offenses and suits

(a) The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. . . .

Act is granted to the ". . . district courts of the United States, and the United States courts of any Territory . . . ." Thus if a violation of or offense under this Act exists, the District Court possessed subject matter jurisdiction.

It is the contention of Tallant and Womack that although they may have violated § 77q for injunctive actions or administrative action by the SEC, or possibly an implied liability action by a private shareholder, they have not committed acts and the indictment does not charge acts which allow imposition of criminal penalties under § 77x. We do not agree. By the sections of the 1933 Act directly relevant to this securities fraud case, § 77q sets forth "fraudulent interstate transactions", § 77c specifies "exempted securities"—those to which the 1933 Act does not apply, and § 77x spells out penalties for violation of the 1933 Act. Under § 77c(a)(11),[13] securities sold wholly within one state, intrastate securities, are exempted from the registration and other aspects of the 1933 Act. However, the *exemptions* of § 77c(a)(11) are specifically made inapplicable to § 77q, the fraudulent interstate transaction section, by subsection c which states "the exemptions provided in section 77c of this title shall not apply to the provisions of this section." 15 U.S.C.A. § 77q(c).

Thus far, one facet of this statutory structure is evident. The fraudulent *intrastate* offer or sale of a security is made unlawful under § 77q if it utilizes ". . . any means or instruments of transportation or communication in interstate commerce or *by use of the mails*, . . . directly or indirectly." (Emphasis added). For Tallant and Womack, such unlawful acts were admitted by their respective *nolo contendere* pleas. See *Lott v. United States*, 1961, 367 U.S. 421, 426, 81 S.Ct. 1563, 6 L.Ed.2d 940.[14] More simply, they admitted violation of a provision of the 1933 Act, the general antifraud provision.

Tallant and Womack argue that although *intrastate securities* are not exempt from the general antifraud provision, the penalties imposed by § 77x still remain inapplicable to a wholly intrastate security because, unlike § 77q, § 77x does not explicitly state that the intrastate security exemption of § 77c(a)(11) is inapplicable to § 77x. Contrary to this argument, the very wording of § 77x *includes* within the perimeters to which it applies a violation of ". . . *any* of the provisions of [the 1933 Act] . . . ." (Emphasis added). One of those provisions is § 77q(a) governing fraudulent interstate transactions. Consequently, Tallant and Womack violated a provision of the 1933 Act and were subject to imposition of the penalties under § 77x for that violation. III L. Loss, Securities Regulation, 1442 n. 45, 1984 (2d ed. 1961).[15]

13.  § 77c.  Exempted securities

 (a) Except as hereinafter expressly provided, the provisions of this subchapter shall not apply to any of the following classes of securities:

\*   \*   \*   \*   \*   \*

 (11) Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.

14.  The Supreme Court stated in *Lott, supra* at 426, 81 S.Ct. at 1567, that

 "[A]lthough it is said that a plea of *nolo contendere* means literally 'I do not contest it,' *Piassick v. United States*, 5 Cir., 253 F.2d 658, 661, and 'is a mere statement of unwillingness to contest and no more,' *Mickler v. Fahs*, 5 Cir., 243 F.2d 515, 517, it does admit

'every essential element of the offense [that is] well pleaded in the charge.' *United States v. Lair*, 195 F. 47, 52 (C.A. 8th Cir.). Cf. *United States v. Frankfort Distilleries*, 324 U.S. 293, 296, 65 S.Ct. 661, 89 L.Ed. 951. Hence, it is tantamount to 'an admission of guilt for the purposes of the case,' *Hudson v. United States*, 272 U.S. 451, 455, 47 S.Ct. 127, 71 L.Ed. 347, and 'nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record,' *United States v. Norris*, 281 U.S. 619, 623, 50 S.Ct. 424, 425, 74 L.Ed. 1076."

15.  Perhaps the most helpful analytical tool is to view the intrastate security exemption under § 77c(a)(11) as a *security* issuance exemption. It is not a fraudulent *transaction* (fraudulent offer or sale) exemption. Section 77q makes fraudulent *transactions* (the fraudulent offer or sale via instrumentalities of interstate com-

From this it follows that if the acts charged in the indictment are sufficient to constitute an offense under the 1933 Act, a District Court possesses jurisdiction to impose criminal penalties under § 77x. Even a cursory examination of the first five counts of the indictment reveals, and we so hold, that the counts sufficiently allege acts which are offenses under the 1933 Act.

Defendants proffer as an additional deficiency in the indictment that it does not charge an offense which constitutes a violation of the mail fraud statute, 18 U.S.C.A. § 1341, standing alone. Counts 6 through 10 on their face state acts which violate § 1341.

On examination of the acts alleged in the indictment and application of the applicable law, any doubt about the sufficiency of the mail fraud counts is dispelled. Section 1341 requires (a) a scheme to defraud, and (b) a mailing for the purpose of executing the scheme. *Pereira v. United States,* 1954, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435; *United States v. Brewer,* 4 Cir., 1975, 528 F.2d 492, 494. The mail fraud counts reallege the scheme to defraud charged under counts 1 through 5 of the indictment which set forth the 1933 Act violations.

Each of the mail fraud counts, 6 through 10, specifically alleges a mailing of stock certificates of Preferred Land Corporation to purchasers under the scheme. This is sufficient for showing acts which constitute the second element of mail fraud. The mailing allegation comes within the definition of mailing given in *Pereira, supra* at 8, 74 S.Ct. 358, that

> "To constitute a violation of these provisions, it is not necessary to show that petitioners actually mailed or transported anything themselves; it is sufficient if they cause it to be done.
>
> \* \* \* \* \* \*
>
> . . . There remains only one question whether Pereira 'caused' the mailing. That question is easily answered. Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Id.,* at 8–9, 74 S.Ct. at 363.

Each day in the general course of securities sales, certificates are mailed by brokers to purchasers and from sellers to brokers and payments from purchasers to brokers or sellers. Such use of the mails was not merely reasonably foreseeable by businessmen such as Tallant and Womack, it had to be known to them.

Nor is the argument that the indictment alleges only an incidental use of mails not essential to the scheme to defraud under *United States v. Maze,* 1974, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603, and *Parr v. United States,* 1960, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277, of any avail. Unlike those instances when the mails were used after completion of the fraud and thus not affecting the success of the scheme, the use of the mails here was an integral part of the scheme—the mailing of the securities to the purchasers. As the recitation[16] from

---

merce or the mails) illegal, not the security or its issuance.

**16.** Since each of the mail fraud counts is substantially similar in wording, only count 6 is set forth below to indicate the sufficiency with which the mail fraud allegations were set forth in the indictment.

COUNT SIX

1. The Grand Jury realleges all of the allegations contained in subparagraphs (a), (b), (c), (d), (e), (f), (g) and (h) of paragraph numbered 1 and paragraphs numbered 2 and 3 of Count One of this indictment as constituting and describing a scheme and artifice devised and intended to be devised by defendants Fred C. Tallant, Sr. and William M. Womack, Jr., during the period from on or about May 18, 1967, to on or about the date of the filing of this indictment, to defraud and to obtain monies and properties by means of false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be and were false when made, and said defendants wilfully and knowingly made use of the mails in the following manner:

2. On or about the 2nd day of June, 1969 in the Northern District of Georgia and within the jurisdiction of this Court, defendants for the purpose of executing the aforesaid scheme and artifice and attempting to do so, caused to be placed in an authorized depository for mail

one of the mail fraud counts, count 6, shows, the indictment alleges use of the mails in completion of the fraud insuring its success. As such, the mails were used to execute the scheme to defraud within the scope of § 1341's application. *United States v. Sampson*, 1962, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136; *United States v. Melvin*, 5 Cir., 1977, 544 F.2d 767; *United States v. Green*, 5 Cir., 1974, 494 F.2d 820, 826.

▇▇ Another alleged constitutional deficiency in the indictment warrants brief comment. Tallant's and Womack's theory that one may not be charged with violation of both the mail fraud statute and § 77q(a) of the 1933 Act, is contrary to the existing case law. See *Edwards v. United States*, 1941, 312 U.S. 473, 61 S.Ct. 669, 85 L.Ed. 957; *United States v. Ashdown*, 5 Cir., 1975, 509 F.2d 793, *reh. denied*, 511 F.2d 1402; *Fisher v. Schilder*, 10 Cir., 1942, 131 F.2d 522; III L. Loss, Securities Regulation, 1430 (2d ed. 1961); see also *United States v. Melvin, supra.*

▇▇ Likewise, the argument that one may not be charged with violation of both the general interstate anti-fraud provision of the 1933 Act or the mail fraud statute and the conspiracy statute, 18 U.S.C.A.

§ 371, is incorrect. See *Pereira, supra* at 11–12, 74 S.Ct. 358; *United States v. Guterma*, 2 Cir., 1960, 281 F.2d 742, 745–46, *cert. denied*, 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93; *Holmes v. United States*, 8 Cir., 1943, 134 F.2d 125, 134.[17]

▇▇ The remaining supposed jurisdictional error relates to Womack's alleged violation of 18 U.S.C.A. § 1505, for obstruction of the SEC's enforcement of the 1933 Act. In setting forth the argument in Womack's brief that count 12 of the indictment ". . . gives no more facts or circumstances and no person could tell who, what, where, when, how, why or whom was involved", only this portion of count 12 is set forth.

> "corruptly influenced, obstructed and impeded and endeavored to influence, obstruct and impede the due and proper administration of the Securities Act of 1932 [1933] (15 U.S.C. 77 [77a et seq.]) under which a proceeding was being had before the Securities and Exchange Commission."

We need not pause unduly in considering this contention. Our reading of the indictment reveals that count 12 in its entirety states sufficiently the charge against Womack.[18]

---

matter, a certificate for 2500 shares of Class A common stock of Preferred Land Corporation enclosed in an envelope addressed to Morris I. McDonald, Post Office Box 4941, Atlanta, Georgia 30307, to be sent and delivered by the Post Office Department of the United States; all in violation of Section 1341, Title 18, United States Code.

17. The Supreme Court stated in *Pereira v. United States, supra*, at 11, 74 S.Ct. at 364 that "[i]t is settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is not defense to a conviction for both. See *Pinkerton v. U. S.*, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 1181–1182, 90 L.Ed. 1489, and cases cited therein. Only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy."

For Tallant and Womack, the conspiracy requires proof of an agreement to commit an offense against the United States—an element not required for violation of the 1933 Act or the mail fraud statute. Similarly, examination of

the elements necessary to violate the general anti-fraud provision of the 1933 Act and the mail fraud statute will reveal an element not common to both—the offer or sale of a security. Compare 15 U.S.C.A. § 77q with 18 U.S.C.A. § 1341; see *United States v. Bruce*, 5 Cir., 1974, 488 F.2d 1224, 1229–30.

18.         COUNT TWELVE

In or about July, 1970, and continuing to on or about the date of the filing of his indictment, defendant WILLIAM M. WOMACK, JR. corruptly influenced, obstructed and impeded and endeavored to influence, obstruct and impede the due and proper administration of the Securities Act of 1933 (15 U.S.C. § 77 [77a et seq.]) under which a proceeding was being had before the Securities and Exchange Commission, an agency of the United States, in that defendant WOMACK caused certain stockholder ledger records of Preferred Land Corporation to be falsified and presented them to Securities and Exchange Commission investigators for examination, in violation of Section 1505, Title 18, U.S.Code.

■ Although an ineptly drafted indictment may sometimes rise to the jurisdictional level, a misread or paraphrased indictment which adequately sets forth the elements of the offense, fairly informs Womack of the charge against which he was to defend, and is sufficiently clear to allow him to plead an acquittal or conviction to bar future prosecutions for the same offense, does not constitute such a jurisdictional defect. See generally, *United States v. Koehler*, 5 Cir., 1977, 544 F.2d 1326.

For the foregoing reasons, we hold (i) the challenge to the constitutionality of the Securities Act of 1933 to be without merit, (ii) the indictment adequately charges offenses within the jurisdiction of the federal courts for violation of the anti-fraud provision of the Securities Act of 1933, the federal mail fraud statute, the federal obstruction of justice, and the federal conspiracy statute.

AFFIRMED.