STATE of North Dakota, Plaintiff
and Appellee,

v.

John Douglas MOTSKO, a/k/a Jack
Motsko, Defendant and Appellant.

Cr. No. 600.

Supreme Court of North Dakota.

Dec. 19, 1977.

Rehearing Denied Jan. 11, 1978.

As Corrected March 20, 1978.

Mervin D. Nordeng, State's Atty., Fargo, for plaintiff and appellee State of North Dakota.

Tom E. Eastman, Fargo, for defendant and appellant.

VOGEL, Justice.

This is an appeal from a conviction under both counts of an information charging kid-

862

napping, a Class A felony, in Count 1, and aggravated assault, a Class C felony, in Count 2.[1] We affirm.

The trial was by a jury. The defendant claimed indigency and asked that a specific lawyer be appointed to represent him. This was done. The jury trial took nearly a week. The attorney on this appeal is not the same attorney who represented the defendant at the trial. The defendant did not testify in his own behalf.

On the evening of June 22, 1976, the complainant, a young woman 20 years of age, met the defendant in a bar and accepted his offer to drive her to her place of employment, where she was working the night shift from 9 p.m. to 2 a.m. He asked what hours she worked and indicated that he might meet her afterwards, a suggestion to which she neither agreed nor disagreed. When she got off work, he was waiting, but she said she was expecting a male friend to pick her up. She sat in defendant's car for about half an hour, waiting for her friend, but he failed to come. She and the defendant then agreed to have breakfast elsewhere and did so. He agreed to take her home, but instead drove to a house which he said was his cousin's, but which was rented to him, and he asked her to come in but she refused. He went in for a few minutes and she waited for him, after which they drank a beer or two and talked in the car. Suddenly she was struck from behind with a blunt object and was forced toward the rear of the house. Part of the time she was dragged by the arms, face down. She was screaming for help, which providently arrived in the form of a young man, Rolf Jacobson, who lived across the street and who braved the darkness and the unknown to find the source of the screams. As a result, the defendant left the complainant in his yard and disappeared, perhaps into

the house. Jacobson took her to his house, where he called the police and an ambulance.

A short time later, the police received a telephone call from the defendant, who offered to turn himself in. He was picked up by the police, was given a *Miranda* warning, and admitted that he had "blasted" the complainant, accompanying the admission with a demonstration of doubling up his fist.

Upon investigation, the police found bloodstains on the complainant's shoes, which had come off while she was being dragged, and on a piece of pipe subsequently received in evidence, on the clothing of the defendant, and on the back step of the house.

On appeal, the present attorney for the defendant makes no fewer than 21 claims of reversible error. We have reclassified them into the following categories:

1. Incompetence of counsel.

a. That the court should disregard the failure of the defendant's trial attorney to object when he assertedly should have objected, and reverse because of the incompetence and ineptness of counsel in failing to make objections.

2. (As to the information)[2]

a. Failure to specify what felony was attempted in connection with the kidnapping.

b. Failure to charge "abduction."

c. Failure to specify the method used to effect the abduction.

d. Failure to set forth the type of restraint used.

e. Charging as two crimes what was only one single series of acts.

3. Unconstitutionality of Chapter 12.1–18 for failure to provide any ascertainable standard of conduct.

1. "*Count 1: having abducted another, to-wit: [the complainant], continued to restrain her with intent to commit a felony or attempt to commit a felony on her person;*

"*Count 2: willfully causing serious bodily injury to another human being, to-wit: [the*

complainant], by striking her about the head and choking her;

"Against the peace and dignity of the State of North Dakota."

2. See footnote 1.

4. Error as to instructions.

a. That the court should have instructed that if the assault was a purpose of the abduction it could not be a separate crime.

b. Failure to define "deception," "force," and "intimidation."

c. Failure to define "substantial distance."

d. Failure to define relationship between "abduction" and "felony."

e. Failure to instruct on lesser included offenses, particularly Class B felony kidnapping, felonious restraint, and unlawful imprisonment.

f. Failure to instruct that the jury must be satisfied beyond a reasonable doubt as to every element of the crime, and to instruct what each element is.

g. That the instructions inadequately differentiated Counts 1 and 2, and thereby implied that a finding of a mere assault would be sufficient to permit a guilty verdict on Count 1.

h. That the court erred in stating that the defendant was accused in the information of "abducting" the complainant.

5. That the court erred in advising the defendant that Exhibit 64 would be admissible if he testified in his own behalf, thereby coercing him into not testifying in his own behalf.

6. That the court erred in admitting into evidence the metal pipe (Exhibit 21) over objection.

7. That the court erred in refusing to enter judgment of acquittal on Count 1 upon motion by the defense.

8. That the evidence was insufficient to sustain the verdict.

9. That the court erred in sentencing the defendant under both counts.

## PRELIMINARY COMMENTS

We start with a few preliminary observations.

It is easy for new counsel on appeal (or for an appellate judge, for that matter) to go through a transcript and find matters that could have been explored further, questions that could have been asked but were not, questions that were asked that should not have been asked, objections that could have been made that were not, and witnesses who could have been called but were not or witnesses who would have been better left uncalled. Hindsight is perfect and criticism is easy. But the lawyer engaged in a trial, who has made an investigation of the facts and has talked to the witnesses, may have his own reasons and they may be very good reasons for not asking a question or making an objection or calling a witness. In all fairness, courts must pay some respect to the right and duty of attorneys, whether court-appointed or not, to use judgment in the heat of a trial, and we must have some doubts about the accuracy of second-guesses later on.

It is all too easy to think that a verdict of guilty shows that the tactics used at the trial failed, and from that jump to the conclusion that other tactics would have succeeded, and from that to the conclusion that the attorney must have been incompetent for not using successful tactics. This approach, of course, ignores the possibility that the defendant may be guilty and that no defense lawyer could succeed in obtaining an acquittal if the prosecution is reasonably competent and the court commits no reversible error.

The mere recital, above, of the facts of this case surely shows that a successful defense in the present case was highly unlikely and that a verdict of guilty is no reason, by itself, for suspecting incompetence of the defense.

We are, of course, alert to violations of the duty of counsel to their clients and of the rights of defendants, but we also are aware of the fact that convicted defendants seldom are grateful to counsel, no matter how competent, and that it is easy to accuse an attorney of incompetence, and difficult

or impossible for him to defend himself, in view of his obligation not to reveal the confidences of his client, and especially when the attorney (as in this case) is not even a participant in the appeal process in which the charges are made against him.

## 1. INCOMPETENCE OF COUNSEL

■ We have read the transcript and find that it does not indicate incompetence of counsel. While, of course, some objections were not made and some possible avenues were not explored, it is for counsel, not appellate courts, to decide on trial strategy. If anything, the trial here was too long and too detailed, rather than the opposite.

Trial counsel for the defendant made extensive use of pretrial discovery. He followed the praiseworthy general rule of not objecting to matters which were harmless, while objecting to evidence which tended to convict his client. He made arguable objections to admission in evidence of the pipe which probably was used to strike the complainant, and he competently argued issues requiring knowledge of recent decisions of this court, such as *Starr v. Morsette*, 236 N.W.2d 183 (N.D.1975), stating the different categories of evidence formerly included within the catch-all description "res gestae." He succeeded in obtaining a ruling excluding Exhibit 64 [see below] and other photographs showing the contents of defendant's basement which, if admitted, probably would have made conviction inevitable.

■ It is just as true in criminal cases as in civil cases, and as true in appeals as it is in motions to reopen judgments, that parties will not be relieved from free, calculated, deliberate choices they have made [*City of Wahpeton v. Drake-Henne, Inc.*, 228 N.W.2d 324 (N.D.1975); *Schnell v. Schnell*, 252 N.W.2d 14 (N.D.1977)], and that it is not our function to allow second-guesses on trial strategy [*Waletzko v. Herdegen*, 226 N.W.2d 648 (N.D.1975); *Rummel v. Rummel*, 234 N.W.2d 848 (N.D. 1975)].

As we said in *State v. Bragg*, 221 N.W.2d 793 (N.D.1974), and reiterated in *State v. McKay*, 234 N.W.2d 853, 857 (N.D.1975),

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hind sight, but counsel reasonably likely to render and rendering reasonably effective assistance."

By that standard, trial counsel was competent.

## 2. LANGUAGE OF THE INFORMATION

■ In these days of broadening pretrial discovery in criminal cases [see Rule 16, N.D.R.Crim.P.], open or almost completely open prosecutorial files [see *State v. Hilling*, 219 N.W.2d 164 (N.D.1974)], and availability of omnibus hearings and pretrial conferences [Rule 17.1, N.D.R.Crim.P.], it would be almost anachronistic to reverse a conviction because the language of the information or indictment is insufficiently detailed.

When the prosecutor's files are generally open to the defense, when motions for discovery and for bills of particulars [Rules 16 and 7(f), N.D.R.Crim.P.] may be made, it would be most surprising if the defendant and his attorney were unaware prior to trial of the claims of the prosecution as to the felony attempted to be committed, the facts constituting the alleged abduction of the complainant, the kind of restraint used to effect the abduction, and the facts upon which the prosecution relies. If the defendant and his counsel know the factual basis for the allegations of the information, there is no reason for them to demand further particulars. Failure to demand amendment of an information, when they already know all they need to know to defend against it, is an indication of rationality, not incompetence, on the part of defense counsel.

Defense counsel in the present case made use of a full array of pretrial procedures:

motions to suppress, motion to forbid reference to criminal record, motion for exculpatory evidence, and motion for all categories of discovery under Rule 16, N.D.R.Crim.P. He prevailed on some of them.

It certainly was not evidence of incompetence of an attorney that he failed to ask for more detail in an information when he had a very good picture of the prosecution's entire case.

An information or indictment need not be couched in the language of the statute. It need only be specific enough to advise the defendant of the charge against him and to enable him to prepare for trial, and to plead the result in bar of a subsequent prosecution for the same offense. *State v. Tjaden,* 69 N.W.2d 272 (N.D.1955). The rule is the same under the Federal Rules of Criminal Procedure, from which our rules were adapted. *United States v. Tallant,* 547 F.2d 1291 (5th Cir. 1977); *United States v. Sherman,* 426 F.Supp. 85 (S.D.N.Y.1976); *United States v. Hall,* 424 F.Supp. 508 (D.Okl. 1975).

### 3. CONSTITUTIONALITY OF CHAPTER 12.1–18, N.D.C.C.

■ The constitutional claim of the defendant is that Chapter 12.1–18 is unconstitutional because of the vagueness of its definitions, particularly its use of the words "substantial" and "substantially" in Section 12.1–18–04, containing definitions of "restrain" and "abduct." In those definitions the word "substantially" or "substantial" appears three times, modifying the verb "interfere" and the nouns "distance" and "period."

We do not believe that the words "substantial" and "substantially" are so indefinite as to make statutes using them in these contexts unconstitutional because of vagueness.

Standing alone, the word "substantial" is a relative and not an exact term, as the defendant says, citing 83 C.J.S. *Substantial* at 762. However, it is a word which acquires precision according to the term it modifies as an adjective. *Lipp v. Corson County,* 76 S.D. 343, 78 N.W.2d 172 (1956).

As used in Section 12.1–18–04, it means "significant," "important," or "real," as distinguished from "insignificant," "trivial," "nominal," or "imaginary." Thus, if a complainant was moved a "significant" or "important"—as distinguished from "trivial"—distance and her liberty was interfered with in a real, important, or significant way, the statute would be satisfied.

We believe that the word "substantially" is one in common use and readily understood by jurors; it is a term which is used in jury instructions which we have approved. See *Dugas v. Felton,* 249 N.W.2d 215 (N.D.1976), in which we held proper an instruction which stated:

" . . . pecuniary loss need not be established by proof in dollars and cents. A substantial loss will be presumed." 249 N.W.2d at 219.

In the same case we said that the proper meaning of the word "substantial," when applied to damages for wrongful death of a child, was best shown when contrasted with "nominal."

Chapter 12.1–18 is not unconstitutionally void for vagueness. Especially in the absence of a request for an instruction defining "substantial" or "substantially," there was no error in using them in the instructions without definition except by context. See 4–b, below.

### 4. INSTRUCTIONS TO THE JURY

■ a. The defendant argues that the purpose of the kidnapping, as charged, was to commit a felony, that the felony must have been the assault which constituted the other charge, and that the court therefore should not have permitted the jury to find the defendant guilty of both charges. He cites in this connection *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973); *People v. Timmons,* 4 Cal.3d 411, 93 Cal.Rptr. 736, 482 P.2d 648 (1971), and *People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969).

Of course, this argument disregards portions of the evidence. The evidence shows that one assault was committed in the car,

probably with a piece of pipe, and other assaults were committed while the complainant was being forced from the car to the back door of the house, and that she was choked, near the back door, until she agreed to enter the house. It is entirely possible that the jury determined that the defendant was guilty of an aggravated assault in the automobile, and then guilty of kidnapping in forcing the complainant to move from the car to the back of the house where another felony, either aggravated assault, murder, or gross sexual imposition (rape) was contemplated, either inside or outside the house.

The court instructed the jury that in order to find the defendant guilty it must find that he abducted the complainant and continued to restrain her with intent to commit a felony or attempt to commit a felony. The court defined the words "abduct" and "restrain" and "intent." In the absence of a request for further instructions, we find no error in the trial court's permitting the two counts to go to the jury.

The *Adams, Timmons*, and *Daniels* cases, *supra*, involved different factual situations. These cases will be mentioned later in this opinion.

■ b. The words "deception," "force," and "intimidation" are words of common understanding, which we hold need not be defined by the court in the absence of a specific request for instruction, in which case the court should exercise an appropriate discretion in deciding whether definitions are necessary.

In *Guon v. United States*, 285 F.2d 140, 142 (8th Cir. 1960), the court said:

"Stated briefly, the contention is that the trial court was required, regardless of any request, to define 'aiding and abetting' and to explain what is meant by the words 'directly or indirectly' as used in the charge. We cannot agree. 'Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion.' *United States v. Bayer*, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654. Frequently, to attempt to explain under-

standable language is merely to confuse. If the instructions given cover the case and are correct, that is enough. *Railway Company v. McCarthy*, 96 U.S. 258, 265–266, 24 L.Ed. 693. *Cf. Hall v. Aetna Life Ins. Co.*, 8 Cir., 85 F.2d 447, 451."

And see *State v. Pandolfo*, 106 N.W.2d 615 (N.D.1960), where we said that we assumed that the members of the jury possessed ordinary intelligence and that they had no difficulty in understanding the meaning of the term "fraudulent practice" as defined in a statute.

We hold that no definition of "deception," "force," and "intimidation" was required. If a request for further instruction had been made, it would have been for the trial court to decide, in its discretion, whether to do so or not.

c. The same is true of the words "substantial distance." We have discussed the meaning of the word "substantial" above.

On this point the defendant again cites the *Adams, Timmons*, and *Daniels* cases, *supra*. All of them involved different factual situations and statutory terminology.

In *People v. Adams*, the kidnapping statute did not refer to movement or asportation at all, and the court felt required to construe the statute so as to include a requirement of asportation so as to avoid constitutional questions and in so doing required that the asportation and confinement "not be merely incidental to the commission of a lesser underlying crime," but if the underlying crime involves murder, extortion, or taking a hostage, movement incidental thereto is sufficient to establish kidnapping. *Timmons*, a 4–to–3 opinion, held that transporting a robbery victim for five blocks by automobile, in a careful manner, was not a movement "which substantially increased the risk of harm beyond that inherent in the underlying crime," essential to the California definition of "kidnapping." *People v. Daniels* held that forcing robbery and rape victims to move 18 feet, 6 feet, and 30 feet within their own apartments did not constitute kidnapping under a statute defining "kid-

napping" as including kidnapping or carrying away any individual to commit robbery.

Obviously, the facts and the statutes differ from those before us.

Our statute as to kidnapping was taken from a proposed Federal criminal code, not yet adopted.

■ We therefore are construing this statute for the first time. As we have indicated above, we believe the words "substantial" and "substantially" are words commonly understood and that the meaning is particularized by the words modified in the statute. We hold that the forcible asportation of the complainant in this case from an automobile, where one assault occurred, to the rear of a house,[3] by force and threats and assaults, both actual and threatened, is not, as a matter of law, insubstantial interference or asportation for an insubstantial distance. Under the circumstances, it was for the jury to decide whether the distance was substantial and the interference substantial.

d. This point appears to be a restatement of 4-a and is discussed above.

■ e. The defendant first argues that the court erred in failing to instruct the jury to determine whether the kidnapping—if it found the defendant guilty of kidnapping—was a Class A felony or whether it was a Class B felony, under Section 12.1–18–01, N.D.C.C., providing that kidnapping is a Class A felony unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a Class B felony. We note that the matter was brought to the court's attention by the prosecution during the taking of exceptions to the instructions, and the attorney for the defendant made no comment whatever. We hold that the error, if any, was waived. It may be that the defense counsel, in this as in other cases, chose to reserve his argument for the sentencing, if any. At any rate, the sentence actually imposed upon the kidnapping conviction was within the range permitted for Class B felonies and the defendant was not prejudiced. The evidence indicates that the release was not voluntary and the place was not safe.

■ The defendant further argues that the court erred in failing to instruct on felonious restraint and unlawful imprisonment, which he asserts are lesser included offenses within the offense of kidnapping. This matter also came up during the discussion in chambers on exceptions to the instructions. Defense counsel had requested an instruction on only one lesser included offense, that of simple assault, and that was given. The court indicated that it felt it had no alternative where there was a request for instruction on included lesser offenses and it would give any such instruction if requested. In the absence of a request, there was no error. *State v. Heasley*, 196 N.W.2d 896 (N.D.1972); *State v. Berger*, 148 N.W.2d 331 (N.D.1967). We do not agree with the rule in some jurisdictions that a trial court must, even in the absence of a request and irrespective of the facts, instruct on all included offenses. See *State v. Piper*, 261 N.W.2d 650 (N.D.1977).

f. The court did instruct that the jury must be satisfied beyond a reasonable doubt as to the existence of every essential element of each offense, and stated what those elements were. After defining the elements of each offense, the instructions go on to say:

"The burden of proof rests upon the State to prove to your satisfaction beyond a reasonable doubt all of the material allegations of the Information before you can return a verdict of guilty."

g. This allegation appears to be a restatement of 4-a, which is discussed above.

---

**3.** While the distance is not stated in the record, we estimate, from photographs, that the distance was approximately 100 feet.

h. The information does not include the word "abducted," but the statute, Section 12.1–18–01, includes the words "abducts" and "having abducted" in defining the meaning of the word "kidnapping," which is included in the information.

The defendant was charged with kidnapping. He was therefore charged with "abducting" the complainant. The court did not err in so stating.

5. Exhibit 64 was a photograph taken from the back door down a flight of stairs to the basement of the defendant's rented house. It was offered to show the purpose of the defendant in attempting to force the complainant to go through the back door, and to show the specific felony he intended to commit. After considering the objection overnight, the court sustained the objection to Exhibit 64. All parties understood that the same objection would apply to other photographs of the basement itself.[4] The matter was thoroughly argued. After ruling that the evidence would not be received, the judge made one further observation, that the matter would be opened up for the State to go into on cross-examination if the defendant took the stand. The court cited *State v. Apley,* 25 N.D. 298, 141 N.W. 740 (1913), and quoted from it a rule permitting broad cross-examination on matters of credibility. The court concluded:

"So I just don't want you to be misled into believing that this is a final ruling, because I think we operate under different standards when we get to cross-examination of a witness. And as the *Apley* case states, whether that witness be a defendant or not."

These remarks, made in the absence of the jury, were not coercive, in our view. They were, instead, merely a helpful notice to the attorney for the defendant that the admissibility of the exhibit would be subject to re-examination if the credibility of

the defendant became an issue, as it might if he testified., It left the decision as to whether he should testify entirely open, and to be decided by the defendant, who was present, and his counsel. We find no error.

6. Complainant's injuries were such that they were caused by a blow from a blunt object, and could have been caused by a blow from a pipe which was found beside the house. After evidence was received that the pipe had human blood upon it, the pipe was received in evidence. The foundation for admission of the pipe in evidence was more than adequate, and there was no error. Argument was made that there was no showing of how the pipe was transported from the car, where the first blow was struck, to the place where it was found alongside the house. This went to its weight as evidence, not its admissibility.

7. Since there was no error, and the evidence received was more than sufficient to justify a finding of guilty. There was no error in denying the motion for judgment of acquittal.

8. As we have stated previously, the evidence was sufficient to sustain the verdicts.

9. As we have stated previously, there is no inconsistency between the kidnapping count and the aggravated assault count. Neither is an included offense in the other, since each requires proof of elements not necessary to be proved to establish the other. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Kowalski v. Parratt,* 533 F.2d 1071 (8th Cir. 1976), *cert. denied* 429 U.S. 844, 97 S.Ct. 125, 50 L.Ed.2d 115; *State v. Pickering,* 225 N.W.2d 98 (S.D.1975). The cases cited by the defendant, again, *People v. Adams, People v. Timmons,* and *People v. Daniels, supra,* are not in point.

The defendant does not claim that the verdicts were excessive, or that they were

---

4. The photographs excluded showed sadomasochistic apparatus. If admitted, the effect might well have been devastating to defendant's case.

not authorized by statute pertaining to each offense. The material available to the court at sentencing, including the record of the prior convictions of the defendant and the details of some of them, would have justified a sentence on the kidnapping charge longer than that imposed.

Affirmed.

ERICSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.